EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oriental Bank & Trust<br><br>    Peticionario<br><br><br>        v.<br><br>Perapi S.E.; Pedro Ortiz Álvarez, Ina de Lourdes Cortés Ríos, la Sociedad Legal de Gananciales compuesta por Ambos; y Zeta Enterprises, Inc.; John Doe y Richard Roe<br><br>    Demandados<br><br>Perapi S.E.; Pedro Ortiz Álvarez, Ina de Lourdes Cortés Ríos, la Sociedad Legal de Gananciales compuesta por Ambos<br><br>    Recurridos | 2014 TSPR 133<br><br>192 DPR ____ |

Número del Caso: AC-2013-98


Fecha: 5 de noviembre de 2014


Tribunal de Apelaciones:

    Región Judicial de Ponce


Abogados de la Parte Peticionaria:

    Lcdo. Daniel Molina López,
    Lcda. Lizannette Morales Crespo
    (Toti & Rodríguez, PSC)


Abogados de la Parte Recurrida:

    Lcdo. Jesús Antonio Rodríguez Urbano
    Lcdo. Luis Emanuel Meléndez Cintrón


Materia: Obligaciones y Contratos – Aplicación de la Cláusula *rebus sic stantibus* por causa de la crisis económica.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Oriental Bank & Trust<br><br>      Peticionario<br><br>            v.<br><br>Perapi S.E.; Pedro Ortiz Álvarez, Ina de Lourdes Cortés Ríos, la Sociedad Legal de Gananciales compuesta por Ambos; y Zeta Enterprises, Inc.; John Doe y Richard Roe<br><br>      Demandados<br><br>Perapi S.E.; Pedro Ortiz Álvarez, Ina de Lourdes Cortés Ríos, la Sociedad Legal de Gananciales compuesta por Ambos<br><br>      Recurridos | AC-2013-0098 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 5 de noviembre de 2014.

Comparece ante nos Oriental Bank & Trust (en adelante, "Oriental Bank") y solicita que revoquemos una Sentencia del Tribunal de Apelaciones. Mediante el dictamen recurrido se revocó una Sentencia Sumaria emitida por el Tribunal de Primera Instancia que declaró Con Lugar una Demanda en cobro de dinero y ejecución de prenda e hipoteca instada por Oriental Bank contra Perapi, S.E., ZETA Enterprises, Inc., el Lcdo. Pedro E. Ortiz Álvarez, su esposa, la Sra. Ina de Lourdes Cortés Ríos y la

Sociedad de Bienes Gananciales compuesta por ambos (en adelante, los "recurridos").

Hoy tenemos la oportunidad de expresarnos en torno a la aplicación de la **excepcional** cláusula *rebus sic stantibus* en el contexto de la recesión económica que sufrimos en Puerto Rico desde mediados del año 2006. Tras un análisis de la controversia ante nuestra consideración resolvemos, en primer lugar, que la crisis económica, sin más, no es una circunstancia imprevisible que justifique la invocación y subsiguiente aplicación de la cláusula *rebus sic stantibus* como defensa contra la máxima *pacta sunt servanda* en el ámbito contractual. Como consecuencia de lo anterior, resolvemos además que los tribunales no están impedidos de dictar Sentencia sumariamente por la mera presentación de una alegación de *rebus sic stantibus* fundamentada en la crisis económica.

A continuación exponemos los hechos que dieron génesis a la controversia de autos.

I

El 12 de enero de 2007, Perapi, S.E., representada por su Presidente, el licenciado Ortiz Álvarez, y el banco comercial Eurobank otorgaron un Contrato de Préstamo dirigido a lo siguiente: (a) rehabilitar o reconstruir tres (3) edificios en el área histórica del Municipio de Ponce, los cuales iban a ser utilizados por los recurridos para ofrecer espacios de arrendamiento comercial; (b) refinanciar cierta deuda existente con Eurobank, y (c)

financiar cualquier costo relacionado al Contrato.[1] A su vez, el Contrato de Préstamo estaba garantizado por un Contrato de Prenda otorgado el mismo día mediante el cual Perapi, S.E. entregó a Eurobank seis (6) Pagarés Hipotecarios para responder por sus obligaciones en caso de incumplimiento.[2] Perapi, S.E. suscribió garantías adicionales mediante documentos en los cuales se constituyó un gravamen sobre todos los arrendamientos y acuerdos de opción presentes y futuros que tuviera dicha entidad.[3] Además, una corporación profesional de nombre Pedro E. Ortiz Álvarez, PSC, cedió a favor de Eurobank un crédito que tenía contra ZETA Enterprises, Inc.[4] Finalmente, el licenciado Ortiz Álvarez, su esposa, la señora Cortés Ríos y la Sociedad Legal de Gananciales compuesta por ambos, otorgaron un Contrato de Garantía Personal mediante el cual se obligaron solidariamente a

---

[1] El préstamo concedido por Eurobank a Perapi, S.E. fue por la cantidad de dos millones doscientos mil dólares ($2,200,000.00). *Véase* el Contrato de Préstamo intitulado *Credit Agreement*, Apéndice del recurso de *Certiorari*, págs. 176-210. El mismo fue posteriormente evidenciado mediante Pagaré suscrito el 2 de abril de 2008. *Véase* el Pagaré, Apéndice del recurso de *Certiorari*, págs. 211-212.

[2] Los seis (6) Pagarés Hipotecarios entregados por Perapi, S.E. a Eurobank mediante el Contrato de Prenda fueron por las cantidades de seiscientos cincuenta y cinco mil dólares ($655,000.00), seiscientos setenta y cinco mil dólares ($675,000.00), quinientos mil dólares ($500,000.00), veinticinco mil dólares ($25,000.00), veinticinco mil dólares ($25,000.00) y veinticinco mil dólares ($25,000.00), respectivamente. Véase el *Mortgage Note Pledge and Security Agreement*, Apéndice del recurso de *Certiorari*, págs. 213-232.

[3] Véanse los Contratos titulados *Master Security Agreement* y *Assignment of Leases and Operating Agreements*, Apéndice del recurso de *Certiorari*, págs. 330-346 y págs. 347-360, respectivamente.

[4] El crédito cedido era hasta un valor de trescientos ochenta mil dólares ($380,000.00). Véase el *Assignment of Credit and Security Agreement*, Apéndice del recurso de *Certiorari*, págs. 361-373.

satisfacer todas las cantidades presentes y futuras que fueran adeudadas por Perapi, S.E.[5]

Debido al incumplimiento de Perapi, S.E. con los términos del Contrato de Préstamo, el 16 de mayo de 2011 Oriental Bank, como sucesor en interés de Eurobank,[6] presentó una acción civil en cobro de dinero y ejecución de prenda e hipoteca contra los recurridos. Luego de varios trámites procesales, los recurridos presentaron su Contestación a Demanda y Reconvención el 4 de agosto de 2011,[7] alegando en síntesis lo siguiente: (1) que el Contrato de Préstamo y demás documentos relacionados adolecían de nulidad debido a la mala fe y dolo contractual por parte de Eurobank; (2) que Oriental Bank se estaba enriqueciendo injustamente, y (3) que era de aplicación la cláusula *rebus sic stantibus* debido al estado actual de la economía.[8] El 7 de septiembre de 2011,

---

[5] Véase el *Continuing and Unlimited Guaranty*, Apéndice del recurso de *Certiorari*, págs. 399-401.

[6] La institución financiera conocida como Eurobank fue objeto de intervención por la Oficina del Comisionado de Instituciones Financieras ("OCIF"), quien nombró al Federal Deposit Insurance Corporation ("FDIC") como Síndico del banco el 30 de abril de 2010. En una fecha posterior, el peticionario y el FDIC entraron en un acuerdo para que el primero adquiriese parte de los activos de Eurobank, incluyendo el interés en los Contratos que dieron lugar a la controversia de autos.

[7] ZETA Enterprises, Inc., presentó su Contestación a la Demanda por separado el día 8 de septiembre de 2011, uniéndose a lo esbozado por los demás demandados-recurridos.

[8] En su Contestación a la Demanda y Reconvención, los recurridos también alegaron que la cesión del Contrato de Préstamo en controversia y sus garantías fue realizada en contravención a la ley. Además, reclamaron que Eurobank dilató los desembolsos del préstamo, lo cual retrasó la construcción del proyecto de los recurridos y aumentó sus costos.

Oriental Bank presentó su Contestación a la Reconvención, en esencia negando las alegaciones de los recurridos.

Tras varios trámites procesales adicionales que resultan impertinentes para resolver la controversia ante nuestra consideración, Oriental Bank presentó una Solicitud para que se Dicte Sentencia Sumaria el 11 de abril de 2012. Argumentó en síntesis que no existían hechos materiales en controversia, por lo que procedía que se dictara Sentencia a su favor por la totalidad de lo adeudado y demás sumas contractualmente pactadas por las partes, así como la ejecución de prenda e hipoteca de las garantías que formaban parte del Contrato de Préstamo. Los recurridos presentaron su Oposición a Moción de Sentencia Sumaria el 26 de junio de 2012, señalando varios hechos que estimaban materiales y en controversia, aludiendo principalmente a la crisis económica como hecho imprevisible que afectó su capacidad de repago y al alegado enriquecimiento injusto por parte de Oriental Bank. Junto a su oposición, los recurridos presentaron un Informe Pericial relacionado a la actual crisis económica.[9] Ante ello, Oriental Bank presentó una Réplica a Oposición a Solicitud de Sentencia Sumaria, argumentando en síntesis que no eran de aplicación las figuras de *rebus sic stantibus* y enriquecimiento injusto y que los recurridos fallaron en controvertir algún hecho material que

---

[9] Véase el Informe Pericial de los recurridos preparado por el Sr. Ramón A. Sánchez, Apéndice del recurso de *Certiorari*, págs. 444-521.

impidiera que se dicte Sentencia sumariamente. Además, incluyeron su propio Informe Pericial controvirtiendo el Informe presentado por los recurridos sobre la situación económica de Puerto Rico.[10]

El 19 de marzo de 2013, archivada en autos copia de su notificación el 3 de abril de 2013, el Tribunal de Primera Instancia dictó Sentencia mediante la cual concluyó que no estaba en controversia el hecho material de que los recurridos incumplieron con su obligación de pagar el préstamo según los términos del Contrato otorgado entre las partes. Por tanto, luego de concluir que no eran de aplicación las doctrinas de *rebus sic stantibus* y enriquecimiento injusto, procedió a dictar Sentencia sumariamente a favor de Oriental Bank. Posteriormente, los recurridos presentaron una Moción de Reconsideración ante el foro primario, la cual fue contestada por Oriental Bank y eventualmente denegada.

Los recurridos oportunamente presentaron un recurso de apelación ante el foro apelativo intermedio, quien revocó el dictamen del foro primario mediante Sentencia emitida el 30 de agosto de 2013 y archivada en autos copia de su notificación el 9 de septiembre de 2013. Entendió el tribunal *a quo* que no procedía resolver el pleito de autos sumariamente, pues podrían estar en controversia hechos materiales que afectarían la procedencia de la defensa

---

[10] Véase el Informe Pericial de Oriental Bank, preparado por el Sr. José J. Villamil de la firma Estudios Técnicos, Inc., Apéndice del recurso de *Certiorari*, págs. 558-572.

afirmativa de *rebus sic stantibus*. Así las cosas, determinó que procedía devolver el caso al foro primario para la celebración de un juicio en su fondo en donde se le permitiera a las partes presentar prueba en cuanto a la aplicación de la cláusula *rebus sic stantibus* y otros asuntos.

No contestes con esta determinación, Oriental Bank presentó recurso de apelación ante nos, señalando que el Tribunal de Apelaciones erró en lo siguiente: (1) al entender que no se desfiló prueba en cuanto a la paridad de las prestaciones entre las partes, y (2) al determinar que no procedía dictar Sentencia Sumaria debido a que existen hechos materiales en controversia relacionados a la procedencia de la defensa de *rebus sic stantibus*. Atendido el recurso de apelación presentado por Oriental Bank, acogimos el mismo como *certiorari* y ordenamos a los recurridos mostrar causa por la cual no procede revocar el dictamen del foro apelativo intermedio. Luego de una prórroga, los recurridos cumplieron con nuestra Orden oportunamente.

Contando con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

### A

Las relaciones contractuales en nuestra jurisdicción se rigen por los principios de la autonomía de la voluntad y *pacta sunt servanda*. El primero, la autonomía de la

voluntad, está recogido en el Art. 1207 del Código Civil de Puerto Rico y dispone que las partes en un contrato tienen la libertad para "establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". 31 LPRA sec. 3372. Por otro lado, el principio de *pacta sunt servanda*, estatuido en el Art. 1044 del Código Civil de Puerto Rico, establece que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". 31 LPRA sec. 2994; *PRFS v. Promoexport*, 187 DPR 42, 52 (2012).

Cuando hablamos de la obligatoriedad de los contratos no solo nos limitamos a los términos expresamente pactados en el propio contrato, sino que abarca "todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil de Puerto Rico, 31 LPRA sec. 3375. Para que un contrato se considere perfeccionado y por tanto obligue a las partes a su cumplimiento, deben concurrir tres elementos: (1) el consentimiento de los contratantes; (2) objeto, y (3) causa. Art. 1213 del Código Civil de Puerto Rico, 31 LPRA sec. 3391.

Sin embargo, un contrato debidamente perfeccionado puede ser objeto de modificación por los tribunales bajo ciertas circunstancias, pues estos tienen la facultad de resolver conforme a equidad, teniendo en cuenta "la razón

natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos". Art. 7 del Código Civil de Puerto Rico, 31 LPRA sec. 7; *Integrand Assurance v. CODECO et al.*, 185 DPR 146, 174-175 (2012). Uno de los remedios en equidad que una parte en un contrato puede reclamar se conoce como la cláusula o condición *rebus sic stantibus et aliquo de novo non emergentibus*. *BPPR v. Sucn. Talavera*, 174 DPR 686, 694 (2008) (citando a J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1983, Tomo II, Vol. I, pág. 17). Aunque ha transcurrido más de medio siglo desde que esta Curia se expresó por primera vez en cuanto a la cláusula *rebus sic stantibus*,[11] dicha figura jurídica únicamente ha sido objeto de un análisis exhaustivo en dos (2) ocasiones. *Véanse BPPR v. Sucn. Talavera*, *supra*; y *Casera Foods, Inc. v. E.L.A.*, 108 DPR 850 (1979).

La cláusula *rebus sic stantibus* como fundamento para revisar los términos de un contrato surge de diversos principios de la teoría general de las obligaciones y los contratos, tales como la buena fe, el abuso del derecho y la equidad contractual. *BPPR v. Sucn. Talavera*, *supra*, pág. 694; *Casera Foods, Inc. v. E.L.A.*, *supra*, pág. 855.

---

[11] *Véase Rodríguez v. Municipio*, 75 DPR 479, 491-492 (1953), donde expresamos que en España estaba ganando terreno la teoría de que una de las limitaciones al principio de *pacta sunt servanda* "se concentra en la llamada cláusula que se supone implícita en todo contrato denominada *rebus sic stantibus* (así firmes las cosas) por la cual podía resolverse el contrato, si sobrevenía un cambio importante en el estado de hecho existente al contratar y en cuanto al resultado injusto y excesivamente oneroso que se originaba". Adicionalmente expresamos que la anterior idea había dado lugar a las doctrinas de la base del negocio y del riesgo imprevisible. *Íd.*, pág. 492. Por otro lado, aunque rehusamos aplicarla, también hicimos mención de la doctrina en *South P. R. Sugar Co. v. Junta*, 82 DPR 847, 862 (1961).

Tratándose la cláusula *rebus sic stantibus* de una condición que se encuentra implícita en el contrato, esta doctrina "parte del supuesto que los contratos de tracto sucesivo o de cumplimiento aplazado obligan mientras no ocurran cambios importantes en el estado de hechos contemplado por las partes al momento de contratar". *Íd.* La misma sirve para atemperar la inflexibilidad y severidad del principio de *pacta sunt servanda* establecido en el Art. 1044 del Código Civil, *supra*, permitiéndole al Tribunal intervenir en el contrato y evitar que se lacere la buena fe o que se cause una injusticia al obligar su cumplimiento específico. *BPPR v. Sucn. Talavera*, *supra*, pág. 695. Esta doctrina "representa un contrapeso a la rigidez y absolutismo expuesto en la prédica de sostener a ultranza, en todo momento y circunstancia, la voluntad contractual de las partes simbolizada en la conocida máxima *pacta sunt servanda*". *Casera Foods Inc. v. E.L.A.*, *supra*, pág. 854.

Debido a que en nuestro ordenamiento no hay disposición legal alguna que contemple la aplicación de la doctrina, por vía jurisprudencial hemos establecido que los siguientes requisitos deben concurrir al momento de evaluar la procedencia de la cláusula *rebus sic stantibus*: (1) que ocurra una **circunstancia imprevisible** como una cuestión de hecho dependiente de las condiciones que concurran en cada caso, lo cual es un requisito fundamental; (2) que el cumplimiento con las prestaciones

del contrato sea extremadamente oneroso, lo cual también es una cuestión de hecho; (3) que no se trate de un contrato aleatorio o que haya un elemento de riesgo que sea determinante; (4) que ninguna de las partes haya incurrido en algún acto doloso; (5) que se trate de un contrato de tracto sucesivo o que esté referido a un momento futuro; (6) que la alteración de las circunstancias ocurran con posterioridad a la celebración del contrato y que presente un carácter de cierta permanencia, y (7) que una parte invoque la aplicación de la doctrina. *Íd.*, pág. 856 (Cita omitida).[12]

Aunque se trata de un remedio excepcional, una vez se demuestra la concurrencia de todos los requisitos para su procedencia "el ámbito remedial del tribunal es amplísimo y flexible". *Íd.*, pág. 857. Entre los posibles remedios se incluyen, sin limitarse a ello y según las circunstancias de cada caso: la suspensión temporera de los efectos del contrato; su resolución o rescisión; la revisión de los

---

[12] En *Casera Foods, Inc. v. E.L.A.*, 108 DPR 850 (1979), una elaboradora se obligó a proveer cierta cantidad de papaya fresca sembrada y cosechada en Puerto Rico. Luego de un tiempo, la compañía no suministró la totalidad de la papaya que se obligó a proveer y justificó su incumplimiento "en una escasez imprevista, pero real, de papaya verde a nivel comercial entre los diversos productores de Puerto Rico". *Íd.*, pág. 852. Al denegar aplicar la cláusula *rebus sic stantibus* a la controversia, expresamos que estaba ausente el requisito fundamental de impredecibilidad o evento imponderable. *Íd.*, pág. 857. Tratándose de una entidad que se dedicaba al negocio objeto del Contrato, "debió y pudo razonablemente prever y anticipar -a través de un simple estudio del mercado- las proyecciones sobre existencia y disponibilidad de la papaya natural en escala comercial necesaria para cumplir con las obligaciones dimanantes de las subastas". *Íd.*, pág. 858. Por tanto, resolvimos que esas circunstancias "no permiten la aplicación de la cláusula de *rebus sic stantibus*", ya que estaba ausente "el factor determinante que justifica, como excepción, la intervención y revisión judicial, a saber, 'un cambio imprevisto y normalmente imprevisible por las partes'". *Íd.* (Citas omitidas).

precios; la suspensión o moratoria, y otros remedios que los tribunales estimen justos y equitativos. *Íd.*

No obstante, hemos resuelto que en ocasiones un contrato puede ser revisado por los tribunales mediante la aplicación de la cláusula *rebus sic stantibus* a pesar de que no concurran los siete (7) requisitos antes mencionados. *BPPR v. Sucn. Talavera*, *supra*, pág. 715. Mediante un análisis de la cláusula *rebus sic stantibus* al amparo de la equidad y la buena fe, así como de las doctrinas de la imprevisión en Francia, de la base del negocio en Alemania y de la excesiva onerosidad en Italia, expresamos que

> Cuando la justicia requiere la intervención de los tribunales conforme a la equidad y la buena fe porque desaparece la base del negocio y falla la causa del contrato, la posibilidad de moderar el contrato rebasa el campo de lo subjetivo y **los tribunales no están limitados por los criterios elaborados en *Casera Foods, Inc. v. E.L.A.*,** *supra*, para la aplicación de la cláusula *rebus sic stantibus*.[13] *Íd.* (Énfasis nuestro).

---

[13] En *BPPR v. Sucn. Talavera*, 174 DPR 686 (2008), este Tribunal aplicó la cláusula *rebus sic stantibus* a una opción de compraventa de un solar que formaba parte de un Contrato de Arrendamiento. Allí expresamos que "exigirle a la sucesión Talavera que venda su propiedad por un precio ridículo e irrisorio lacera el principio de reciprocidad entre las prestaciones que es esencial a las obligaciones bilaterales". *Íd.*, pág. 714. Ello debido a que en la opción de compraventa se había pactado un precio de veintidós mil quinientos dólares ($22,500.00) para la compra de la propiedad, cantidad que luego de transcurrido el término de veinticinco (25) años del Contrato representaba tan solo entre un cuatro por ciento (4%) y siete por ciento (7%) del valor real de la propiedad. Además, la señora Talavera, quien fue parte original en el Contrato, era una persona de edad avanzada sin conocimiento financiero y legal, mientras que el Banco Popular tenía pleno conocimiento de la transacción que estaba llevando a cabo. Por tanto, resolvimos que avalar lo pactado en ese caso luego del cambio imprevisible en el valor de la propiedad "quebrantaría significativamente el principio de la autonomía de la voluntad y violentaría los principios de equidad y buena fe". *Íd.* Así las cosas, en ese caso revocamos al foro apelativo intermedio y reinstalamos la Orden del foro primario a los efectos de que las partes debían negociar un precio de compraventa justo en caso de que el Banco Popular se mantuviera interesado en adquirir la propiedad. *Íd.*, pág. 716.

Conforme a lo anterior, podría proceder la aplicación de la cláusula *rebus sic stantibus* a una controversia en particular a pesar de que no se encuentran presentes todos los criterios esbozados en *Casera Foods, Inc. v. E.L.A.*, *supra*, en aquellas circunstancias en las cuales se alteran las bases del negocio de forma tal que desaparezca la causa que dio origen al contrato y las prestaciones entre las partes se tornen desproporcionales entre sí. *BPPR v. Sucn. Talavera*, *supra*, pág. 715. En estos casos, obligar el cumplimiento específico del contrato podría vulnerar la buena fe, la autonomía de la voluntad y el principio de *pacta sunt servanda*. *Íd.*

No debemos perder de perspectiva que aunque nuestro ordenamiento provee para la aplicación de la cláusula *rebus sic stantibus*, **"se trata de un remedio de excepción, para situaciones extraordinarias en que se impone un prudente y escrupuloso discernimiento judicial de moderación"**. *Casera Foods, Inc. v. E.L.A.*, *supra*, pág. 857. (Énfasis nuestro). *Véase además Mun. de Ponce v. A. C. et al.*, 153 DPR 1, 36-37 (2000).[14] Consecuentemente, en todo momento debemos tener presente que a pesar de que pueden surgir circunstancias que ameriten la invocación de la cláusula *rebus sic stantibus*, "la obligatoriedad e irrevocabilidad del contrato es de suma importancia para la estabilidad de las negociaciones y las relaciones

---

[14] Al igual que en *Casera Foods, Inc. v. E.L.A.*, *supra*, en *Mun. de Ponce v. A. C. et al*, 153 DPR 1 (2000), denegamos aplicar la doctrina debido a que no estaba presente una circunstancia imprevisible.

económicas". *BPPR v. Sucn. Talavera*, *supra*, pág. 696. Por tales motivos, en todo caso en donde se contemple la aplicación de la excepcional norma, es un requisito *sine qua non* para su procedencia el que la circunstancia que altera el negocio sea realmente imprevisible.

B

La crisis económica mundial, como circunstancia imprevisible que afecta la paridad de las prestaciones en un contrato, ha sido objeto de controversia en años recientes. Como se desprende de la controversia de autos, Puerto Rico no está ajeno a ello, pues nos encontramos en medio de una recesión económica desde mediados del año 2006.[15]

Según se puede colegir de nuestras expresiones en *Casera Foods, Inc. v. E.L.A.*, *supra*, y *BPPR v. Sucn. Talavera*, *supra*, el desarrollo doctrinal de la cláusula *rebus sic stantibus* en nuestra jurisdicción proviene principalmente del Derecho Civil español, según este ha sido complementado por figuras análogas encontradas en otras jurisdicciones civilistas tales como la francesa, la alemana y la italiana. Por tanto, aunque no estamos obligados por sus pronunciamientos, resulta conveniente acudir a la jurisprudencia emitida por el Tribunal Supremo

---

[15] En *Domínguez Castro v. E.L.A.*, 178 DPR 1, 50-51 (2010), tomamos conocimiento judicial de la precaria situación económica que afecta a Puerto Rico desde el año 2006, situación que continúa vigente al día de hoy. *Véase además Aponte v. Srio. de Hacienda, E.L.A.*, 125 DPR 610, 625 (1990), donde hicimos lo propio respecto a una crisis económica que surgió como consecuencia del alza en los precios del petróleo para los años 1975 y 1976.

de España para ayudarnos a resolver la controversia que hoy se nos presenta.

En España recientemente se ha desarrollado jurisprudencia específicamente relacionada a la crisis económica como motivo para invocar la cláusula *rebus sic stantibus.* En la Sentencia de 27 de abril de 2012, el Tribunal Supremo de España evaluó un Contrato de Arrendamiento Comercial de larga duración a la luz de los requisitos para la aplicación de la excepcional doctrina. En cuanto a los cambios en la economía, sentenció el máximo foro español que

> **[L]a transformación económica de un país (...) no puede servir de fundamento para el cumplimiento de los requisitos requeridos por la jurisprudencia para llegar a la existencia de un desequilibrio desproporcionado entre las prestaciones fundado en circunstancias imprevisibles, pues las circunstancias referidas no pueden tener tal calificación.** *Íd.* (Énfasis nuestro).[16]

El Tribunal Supremo español fue aún más categórico en cuanto al carácter previsible de la crisis económica al denegar aplicar la cláusula *rebus sic stantibus* en la Sentencia de 8 de octubre de 2012, donde enfatizó que un deudor debe **"prever la existencia de una situación de riesgo que era posible anticipar mentalmente, dado que las fluctuaciones del mercado son cíclicas como la historia económica demuestra"**. (Énfasis nuestro).

---

[16] En la Sentencia del 27 de abril de 2012, el Tribunal Supremo español también le dio énfasis al hecho de que debido a su larga duración, el propio Contrato de Arrendamiento contenía cláusulas para la actualización de la renta.

Por su pertinencia a la controversia de autos, debemos señalar además que distintos tribunales apelativos intermedios de España han enfatizado el carácter previsible de la crisis cuando se trata de empresas que se dedican a los negocios de bienes raíces o construcción. *Véanse* la Sentencia de 1 de marzo de 2012 de la Audiencia Provincial de Álava ("[L]a demandada es una empresa [que se] dedica a la adquisición de terrenos urbanos y rústicos por lo que bien pudo prever el descenso de las ventas y la bajada de precios en el sector, consecuencia de la desaceleración del mercado inmobiliario"); y la Sentencia de 20 de marzo de 2012 de la Audiencia Provincial de Lleida ("La crisis en el sector de la construcción no puede suponer una justificación genérica para el incumplimiento de las obligaciones por todos los que se dedican a este sector").

Sin embargo, recientemente el Tribunal Supremo de España ha demostrado cierta flexibilidad en el contexto particular de una compraventa de un hogar que no se pudo completar porque los compradores no pudieron obtener un préstamo hipotecario debido a la crisis económica.[17] En la Sentencia del 17 de enero de 2013, luego de haberse obligado mediante un Contrato de Compraventa, a la fecha del otorgamiento de la Escritura Pública los deudores alegaron no poder obtener el financiamiento necesario para

---

[17] Nótese que un contrato de compraventa es de tracto único, sin embargo, en este caso se refiere a sucesos futuros contemplados en el mismo contrato: la obtención del préstamo hipotecario y el otorgamiento de la escritura de compraventa.

adquirir la propiedad debido a la crisis económica. Expresó el Tribunal Supremo español lo siguiente:

> **[U]na recesión económica como la actual, de efectos profundos y prolongados, puede calificarse, si el contrato se hubiera celebrado antes de la manifestación externa de la crisis, como una alteración extraordinaria de las circunstancias,** capaz de originar, siempre que concurran en cada caso concreto otros requisitos como aquellos a los que más adelante se hará referencia, una desproporción exorbitante y fuera de todo cálculo entre las correspectivas prestaciones de las partes, elementos que la jurisprudencia considera imprescindibles para la aplicación de [la cláusula *rebus sic stantibus*]. *Íd.* (Énfasis nuestro).

No obstante, puntualizó el Tribunal Supremo español que lo anterior

> "**[N]o significa que la crisis económica, por sí sola, permita al comprador desistir del contrato, pues en tal caso se produciría un manifiesto desequilibrio en contra del vendedor, se propiciarían los incumplimientos meramente oportunistas, favoreciendo a quien en verdad siguiera interesado en comprar pero por un precio inferior, y, en definitiva, se desvirtuaría el verdadero sentido de una determinada solución jurídica hasta el punto de convertirla en un incentivo para el incumplimiento**". *Íd.* (Énfasis nuestro).

A base de lo anterior, el máximo foro judicial español resolvió que no procedía aplicar la cláusula *rebus sic stantibus* a la controversia ante sí, ya que su aplicación "**no puede fundarse en el solo hecho de la crisis [económica]**", sino que deberán evaluarse otros factores sobre los cuales las partes deberán presentar prueba. *Íd.* (Énfasis nuestro).[18]

---

[18] Según mencionado anteriormente, en este caso el Tribunal Supremo español atendía una controversia relacionada a un Contrato de Compraventa de un bien inmueble en donde los deudores alegaron no

En ese sentido, a pesar de contemplar la aplicación de la norma en situaciones que involucren la compraventa de hogares, el Tribunal Supremo español se mantiene firme en cuanto a su carácter excepcional.[19] Es decir, la única circunstancia donde el Tribunal Supremo español ha considerado aplicar la doctrina es en casos en donde la crisis económica imposibilita la obtención del préstamo hipotecario necesario para la compra de un hogar, y aun así se ha mostrado renuente a aplicarla dentro de dicho contexto.[20] Para propósitos de nuestro análisis, es importante destacar que aunque bajo estas circunstancias específicas la cláusula *rebus sic stantibus* podría ser de aplicación, el Tribunal Supremo español entiende que la crisis económica no es un fundamento que por sí solo

---

haber podido obtener el préstamo hipotecario correspondiente debido a la crisis económica. El máximo foro español expresó que en estos casos se deben considerar los siguientes factores: "el destino de la casa comprada a vivienda habitual o, por el contrario, a segunda residencia o a su venta antes o después del otorgamiento de la escritura pública; la asignación contractual del riesgo de no obtener financiación y el grado de colaboración prometido por el vendedor para obtenerla, distinguiendo entre contratantes que sean profesionales del sector inmobiliario y los que no lo sean; la situación económica del comprador al tiempo de la perfección del contrato y al tiempo de tener que pagar la parte pendiente del precio que esperaba poder financiar; el grado real de imposibilidad de financiación y sus causas concretas añadidas a la crisis económica general, debiéndose valorar también, en su caso, las condiciones impuestas por las entidades de crédito para conceder financiación; o en fin, las posibilidades de negociación de las condiciones de pago con el vendedor y, por tanto, de mantener el contrato como alternativa preferible a su ineficacia". Sentencia de 17 de enero de 2013 del Tribunal Supremo español.

[19] Para dos (2) instancias adicionales en donde el Tribunal Supremo español denegó aplicar la cláusula *rebus sic stantibus*, *véase* la Sentencia de 22 de julio de 2013 y la Sentencia de 27 de noviembre de 2013.

[20] Aun cuando el Tribunal Supremo español contempla su posible aplicación en casos de compraventa de hogares, en la Sentencia de 18 de enero de 2013 también denegó aplicar la cláusula *rebus sic stantibus* a un Contrato de Compraventa de hogar por alegadamente no haberse podido obtener el préstamo hipotecario debido a la crisis económica.

amerite aplicar la doctrina, sino que dependerá de la concurrencia de un conjunto de factores que serán evaluados por los tribunales. Además, es importante notar que, en todo caso, **el contrato debe haberse celebrado previo al comienzo de la crisis económica.**[21]

De lo anterior podemos observar una tendencia del máximo foro judicial español a rechazar la modificación de un contrato debido a la crisis económica, asunto que debemos considerar al abordar el tema en nuestra jurisdicción. Esto es cónsono con el carácter excepcional que siempre se le ha otorgado a la cláusula *rebus sic stantibus*. Además, se puede apreciar que el carácter de previsibilidad de la crisis económica —o, *a contrario sensu*, su imprevisibilidad— es un criterio fundamental a evaluarse a la hora de resolver si procede aplicar la doctrina, asunto que para los tribunales españoles resulta aún más fácil de determinar en casos en los cuales quien invoca su aplicación es una empresa dedicada al negocio de bienes raíces o de la construcción.

---

[21] Ya existe jurisprudencia española donde se aplicó la cláusula *rebus sic stantibus* a un Contrato que se otorgó previo a la crisis, aunque con ciertas particularidades. En la Sentencia de 26 de abril de 2013, el Tribunal Supremo de España nuevamente evaluó una compraventa en donde los compradores alegaron que no pudieron obtener un préstamo hipotecario debido a la crisis económica. En ese caso el más alto foro español decidió aplicar la doctrina, ya que el incumplimiento del vendedor con el plazo para la entrega de la propiedad fue el motivo de que dicho plazo quedara para luego de que adviniera la crisis económica, con la consecuencia de imposibilitar el préstamo hipotecario que necesitaban los compradores. *Íd.* En otras palabras, el Tribunal Supremo español entendió en ese caso que el motivo por el cual los compradores se vieron imposibilitados de adquirir la propiedad era directamente imputable al incumplimiento de los vendedores.

III

Según mencionamos al resumir el trámite procesal del asunto ante nuestra consideración, está en controversia si el foro primario actuó correctamente al disponer del caso por la vía sumaria. Repasemos brevemente el Derecho relacionado a la procedencia de una Sentencia Sumaria en nuestro ordenamiento jurídico.

El propósito del mecanismo procesal de Sentencia Sumaria es proveer una solución justa, rápida y económica para aquellos litigios de naturaleza civil en donde no existe un conflicto o controversia genuina de hechos materiales. *SLG Zapata-Rivera v. J.F. Montalvo*, 2013 TSPR 95, pág. 15, 189 DPR ___ (2013); *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Abrams Rivera v. E.L.A.*, 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010). En atención a ello, la Regla 36.1 de Procedimiento Civil provee para que un demandante pueda "presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes". 32 LPRA Ap. V, R. 36.1; *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*, págs. 15-16.

De no existir controversia en cuanto a los hechos materiales que motivaron el pleito, el tribunal podrá dictar sentencia sumariamente a favor de la parte que la solicita sin la necesidad de celebrar un juicio, pues solo

restaría aplicar el derecho a los hechos no controvertidos. *Íd.; Const. José Carro v. Mun. Dorado*, *supra*, pág. 128; *Mejías et al. v. Carrasquillo et al.*, *supra*, pág. 299; *Abrams Rivera v. E.L.A.*, *supra*, pág. 932; *Quest Diagnostics v. Mun. de San Juan*, 175 DPR 994, 1003 (2009). Empero, el tribunal únicamente dictará Sentencia Sumaria a favor de una parte si el derecho aplicable así lo justifica. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3; *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*, págs. 15-16. La Regla 36.3 de Procedimiento Civil, *supra*, dispone los requisitos con los que debe cumplir una moción de sentencia sumaria y su oposición.

Ante una moción de sentencia sumaria debidamente presentada y fundamentada, la parte que se opone debe demostrar que existe controversia en cuanto a algún *hecho material* que sea constitutivo de la causa de acción del demandante. Nos hemos referido a un hecho material como "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010) (cita omitida). *Véanse además SLG Zapata-Rivera v. J.F. Montalvo*, *supra*, pág. 15; *Pepsi-Cola v. Mun. Cidra et al.*, 186 DPR 713, 756 (2012); *Mejías et al. v. Carrasquillo et al.*, *supra*, págs. 299-300; *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011).

De otra parte, la controversia en cuanto a un hecho material debe ser real, por lo que cualquier duda que

pueda surgir no es suficiente para derrotar la procedencia de una moción de sentencia sumaria. *Ramos Pérez v. Univisión*, *supra*, pág. 214. "Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". *Íd.*; *Pepsi-Cola v. Mun. Cidra*, *supra*, pág. 756. Por otro lado, aunque toda inferencia que se haga sobre los hechos incontrovertidos debe hacerse a favor de la parte que se opone a que se dicte Sentencia Sumaria, esta no puede meramente cruzarse de brazos y descansar en sus alegaciones. *Pepsi-Cola v. Mun. Cidra*, *supra*, pág. 756. Podemos encontrar que existe una controversia real y sustancial en cuanto a un hecho material cuando la parte que se opone a que se dicte sentencia sumariamente presenta prueba que podría inducir a un juzgador racional de los hechos a resolver a su favor. *Ramos Pérez v. Univisión*, *supra*, pág. 214.

En fin, los tribunales estamos impedidos de dictar Sentencia Sumaria cuando existan hechos materiales y esenciales controvertidos. *Pepsi-Cola v. Mun. Cidra*, *supra*, pág. 757; *S.L.G. Szendrey-Ramos v. Consejo Titulares*, *supra*, pág. 167; *Ramos Pérez v. Univisión*, *supra*, pág. 217; *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004). Tampoco procede dictar Sentencia Sumaria cuando hay alegaciones afirmativas en la demanda que no han sido refutadas, cuando de los propios documentos que acompañan la moción surge que existe una controversia sobre algún

hecho material y esencial, o cuando como cuestión de Derecho no procede. *Íd.* No obstante, según se desprende de nuestra discusión, si lo anterior no ocurre y la Sentencia Sumaria procede como cuestión de Derecho, el Tribunal deberá dictar sentencia sumariamente a favor de quien la solicita.

                                    IV

Evaluado el marco jurídico pertinente, nos toca aplicar el Derecho a los hechos ante nuestra consideración. Oriental Bank aduce que incidió el Tribunal de Apelaciones al revocar la Sentencia Sumaria dictada a su favor por el Tribunal de Primera Instancia. En suma, el foro apelativo intermedio entendió que la controversia ameritaba celebrar un juicio en su fondo, ya que el foro primario no contaba con prueba suficiente para determinar si procedía o no la defensa de *rebus sic stantibus* en yuxtaposición con la crisis económica.

Ciertamente, la interrogante en cuanto a si procede aplicar la cláusula *rebus sic stantibus* a una controversia contractual ha sido atendida anteriormente por este Tribunal. No obstante, no habíamos tenido la oportunidad de aplicar la norma en el contexto de la crisis económica que enfrentamos en Puerto Rico desde mediados del año 2006, hecho de cuya existencia tomamos conocimiento judicial. Por ello, como cuestión de umbral debemos resolver si la crisis económica puede servir como fundamento para aplicar la cláusula *rebus sic stantibus* y

modificar los términos de un Contrato por la vía judicial. Resolvemos en la negativa. Veamos.

En primer término, las fluctuaciones del mercado y los giros que da la economía son eventos cíclicos que hacen de una crisis económica un evento previsible. Así ocurrió con la Gran Depresión del 1930, la crisis petrolera en la década del 1970, la crisis financiera a principios de la década del 1980, así como otros eventos que ocurrieron con anterioridad y posterioridad a los aquí mencionados. Permitir que una crisis económica, sin más, sirva como fundamento para ignorar la máxima *pacta sunt servanda* y aplicar la cláusula *rebus sic stantibus* implicaría convertir la excepción en la norma, con la fatal consecuencia de crear caos e incertidumbre en las relaciones contractuales en nuestra jurisdicción.

Debido a que la situación económica adversa de la Isla nos afecta a todos, caracterizar la crisis actual como una circunstancia imprevisible y aplicar la doctrina conllevaría a que todos estuviéramos excusados de pagar nuestros hogares, automóviles, tarjetas de crédito y cualquier otra deuda en la que hayamos incurrido previo al advenimiento de la crisis económica en Puerto Rico. Aún más devastador sería contemplar la aplicación de la excepcional doctrina a Contratos de Préstamos Comerciales con garantías prendarias e hipotecarias, tal y como el Contrato que evaluamos en el presente recurso, ya que significaría sentenciar a muerte el sistema financiero de

Puerto Rico y condenar a sus ciudadanos a presenciar un caos económico sin precedentes.[22]

*Por tanto, resolvemos que la crisis económica, sin más, no puede considerarse como una circunstancia imprevisible, por lo que no puede servir como fundamento suficiente para que los tribunales procedan a modificar los términos de un Contrato mediante la cláusula rebus sic stantibus.*

Habiendo ya resuelto que la crisis económica no es una circunstancia imprevisible, luego de evaluar la controversia de autos a la luz de los requisitos esbozados en *Casera Foods, Inc. v. E.L.A.*, *supra*, resulta forzoso concluir que no concurren los elementos necesarios para que proceda la defensa invocada por los recurridos. En primer lugar, de entrada podemos observar que el requisito fundamental de imprevisibilidad no está presente, lo cual derrota cualquier pretensión que tuviesen los recurridos en cuanto a la aplicabilidad de la cláusula *rebus sic stantibus*. Segundo, aun si cualificáramos la crisis económica como un evento imprevisible, lo cual negamos, los recurridos entraron en la relación contractual con Oriental Bank en el año 2007, a sabiendas de que Puerto

---

[22] Conviene puntualizar que tomamos conocimiento judicial de que la crisis económica como motivo para invocar la cláusula *rebus sic stantibus* ha sido objeto de controversia ante el Tribunal de Apelaciones en ocasiones anteriores. No obstante, en aquellas instancias el foro apelativo intermedio actuó correctamente al rehusar aplicar la doctrina. En esta ocasión nos enfrentamos a un dictamen donde el Panel de Jueces en cuestión decidió que la doctrina -según fundamentada en la crisis- podría ser aplicable a una controversia en particular, por lo que decidimos expedir el auto de *certiorari* y revocar el foro *a quo*.

Rico se encontraba en una recesión económica desde el año 2006.

Igualmente, debido a que la crisis económica no es una circunstancia imprevisible, tampoco se configura una situación donde podríamos ejercer nuestra función moderadora a la luz de nuestros pronunciamientos sobre la buena fe y la equidad en *BPPR v. Sucn. Talavera*, *supra*. Además, contrario a los hechos que motivaron moderar los términos del Contrato en aquella ocasión, en la controversia de autos nos encontramos ante un Contrato típico y ante un deudor que es conocedor de la industria de la construcción y bienes raíces y se obligó como parte de sus actividades comerciales rutinarias.[23]

Por tanto, actuó correctamente el foro primario al dictaminar que la cláusula *rebus sic stantibus* no era aplicable a la controversia de autos, por lo que es improcedente pasar prueba relacionada a su aplicación. Esto, a su vez, nos lleva a concluir que erró el Tribunal de Apelaciones al revocar la Sentencia Sumaria dictada por el foro primario. Ya habiendo resuelto que la crisis económica no era imprevisible y que por tanto es improcedente una defensa de *rebus sic stantibus* que se base en estas circunstancias, tampoco puede servir como fundamento para impedir que se dicte Sentencia sumariamente.

---

[23] Véase la nota al calce número 13, donde discutimos los hechos que motivaron modificar el contrato en *BPPR v. Sucn. Talavera*, *supra*.

En su Solicitud para que se Dicte Sentencia Sumaria, Oriental Bank demostró ser acreedor prendario e hipotecario de una deuda líquida, vencida y exigible. Por su parte, los recurridos, en vez de controvertir los hechos antes mencionados, se limitaron a discutir la aplicabilidad de la cláusula *rebus sic stantibus* basada en la crisis económica y otros asuntos que no están ante nuestra consideración. En atención a lo anterior, resulta evidente que los recurridos no controvirtieron ninguno de los hechos materiales probados por Oriental Bank. Por tanto, debido a que como cuestión de Derecho procedía dictar Sentencia Sumaria a favor de Oriental Bank, resolvemos que erró el Tribunal de Apelaciones al revocar al foro primario y devolver el caso para la celebración de un juicio en su fondo.[24]

V

Por todo lo antes expuesto, expedimos el auto de *Certiorari*, revocamos la Sentencia del Tribunal de Apelaciones y resolvemos que no procede aplicar la cláusula *rebus sic stantibus* a la controversia de autos, por lo que la Sentencia dictada sumariamente por el Tribunal de Primera Instancia procede conforme a Derecho. Por tanto, reinstalamos la Sentencia emitida sumariamente por el Tribunal de Primera Instancia en toda su extensión,

---

[24] Sin embargo, aclaramos que lo aquí expresado está dirigido a controversias como la de autos, en las cuales la invocación de la cláusula *rebus sic stantibus* está amparada exclusivamente en la existencia de la crisis económica. Estamos conscientes de que, en algunos casos, podrían surgir controversias de hecho materiales relacionados a la aplicabilidad de la cláusula *rebus sic stantibus* que ameriten la celebración de un juicio en su fondo.

sentenciando a los recurridos al pago de lo adeudado y ordenando la ejecución de prenda e hipoteca de los bienes que formaron parte de las garantías del contrato de préstamo otorgado entre las partes.

Se dictará sentencia de conformidad.


                              Mildred G. Pabón Charneco
                                   Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Oriental Bank & Trust | | |
| Peticionario | | *Certiorari* |
| v. | | |
| Perapi S.E.; Pedro Ortiz Álvarez, Ina de Lourdes Cortés Ríos, la Sociedad Legal de Gananciales compuesta por Ambos; y Zeta Enterprises, Inc.; John Doe y Richard Roe | AC-2013-0098 | |
| Demandados | | |
| Perapi S.E.; Pedro Ortiz Álvarez, Ina de Lourdes Cortés Ríos, la Sociedad Legal de Gananciales compuesta por Ambos | | |
| Recurridos | | |

SENTENCIA

En San Juan, Puerto Rico, a 5 de noviembre de 2014.

Por los fundamentos antes expuestos, expedimos el auto de *Certiorari*, revocamos la Sentencia del Tribunal de Apelaciones y resolvemos que no procede aplicar la cláusula *rebus sic stantibus* a la controversia de autos, por lo que la Sentencia dictada sumariamente por el Tribunal de Primera Instancia procede conforme a Derecho. Por tanto, reinstalamos la Sentencia emitida sumariamente por el Tribunal de Primera Instancia en toda su extensión, sentenciando a los recurridos al pago de lo adeudado y ordenando la ejecución de prenda e hipoteca de los bienes que formaron parte de las garantías del contrato de préstamo otorgado entre las partes.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Presidenta

señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado sin opinión escrita.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo