Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| AUTORIDAD DEL DISTRITO DEL CENTRO DE CONVENCIONES DE PUERTO RICO<br><br>Apelada<br><br>V.<br><br>3RD MILLEN[N]IUM SURGERY CENTER, LLC<br><br>Apelante | KLAN202400196 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV07541<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 7 de mayo de 2024.

El 1 de marzo de 2024, compareció ante este Tribunal de Apelaciones 3rd Millennium Surgery Center, LLC (en adelante, 3rd Millennium o parte apelante), mediante *Escrito de Apelación*. Por medio de este, nos solicita que revisemos la *Sentencia Parcial* emitida el 1 de febrero de 2024 y notificada al siguiente día, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Moción Solicitando que se Dicte Sentencia Sumariamente (Moción de Sentencia Sumaria al Amparo de la R. 36)* instada por la Autoridad del Distrito del Centro de Convenciones de Puerto Rico (en adelante, la Autoridad o parte apelada).

Por los fundamentos que adelante se esbozan, se confirma el dictamen apelado.

Número Identificador

SEN2024 _____

# I

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Demanda* sobre Sentencia Declaratoria interpuesta el 22 de agosto de 2022 por la Autoridad en contra de 3rd Millennium Surgery Center, LLC. En apretada síntesis, la parte apelada alegó que, el 4 de noviembre de 2016, la Autoridad y 3rd Millennium suscribieron un contrato de arrendamiento intitulado *Ground Lease and Development Agreement* para el desarrollo, construcción y operación de un Centro Integral de Servicios Médicos en las parcelas E1 y E2 del Distrito del Centro de Convenciones (en adelante, el Contrato). El aludido contrato fue elevado a escritura pública mediante la Escritura Pública Número 14 titulada *Deed of Ratification and Conversion of Ground Lease and Development Agreement and Right to Purchase to Public Instrument.*

Aseveró la parte apelada que, a solicitud de las partes, el Notario Blanco Fuertes presentó la aludida escritura para su inscripción en el Registro de la Propiedad (en adelante, el Registro). Adujo que, a la fecha de interponer la Demanda, la misma poseía el número de asiento 2016-117701-SJ01, pero que aún no había sido evaluada ni inscrita en el Registro.

Conforme surge de las alegaciones, el contrato en controversia dispone, entre otros asuntos, lo siguiente:

> 2.2 Pre-Development Period. Following the Term Commencement Date, Tenant shall have a pre-development Period (the "Pre-Development Period"), which shall expire thirty-six (36) months after the Effective Date, during which it shall (i) obtain all necessary financing for the Tenant's Improvement (as defined below) to be built on the Premises; (ii) complete the design of the Tenant's Improvements; (iii) obtain the necessary permits for the construction of the Tenant's Improvements; and (iv) pre-lease the Project.
>
> ...
> The Authority shall tender possession of the Premises to Tenant without any further action by the Authority on the execution date of the credit agreement which shall evidence and govern the line of credit whose

disbursements shall be applied to finance the Project's construction.

De acuerdo a lo pactado por las partes, el término para que 3rd Millennium culminara el proceso de pre- desarrollo vencía el 4 de noviembre de 2019. Acotó la parte apelada que, vencido el término estipulado entre las partes, 3rd Millennium no cumplió con sus obligaciones contractuales. A lo anterior añadió que, la parte apelante tampoco le entregó a la parte apelada evidencia del contrato de la línea de crédito que se proponía utilizar para financiar la construcción. Arguyó la parte apelada que, ante ello, la parte apelante nunca entró en posesión de los terrenos para comenzar la construcción.

Aseveró la Autoridad que ante el incumplimiento de 3rd Millennium con sus obligaciones contractuales antes mencionadas incluyendo, llevar a cabo la construcción, el 8 de noviembre de 2019, le envió a 3rd Millennium una carta mediante correo certificado, ello, de conformidad con la sección 13.2 del Contrato, en la que le concedió treinta (30) días para subsanar su incumplimiento. Acotó que, transcurrido dicho término, la parte apelante no subsanó su incumplimiento ni tampoco cumplió con sus obligaciones bajo la fase de pre- desarrollo.

La parte apelada arguyó en su Demanda que, vencido el aludido contrato, actualmente no existe un contrato vigente entre las partes registrado en el Registro de Contratos de la Oficina del Contralor. En vista de lo anterior, la parte apelada aduce que, le ha solicitado en múltiples ocasiones a la parte apelante que retire el Asiento de la Escritura Pública Número Catorce (14). Empero, transcurridos casi tres años, la parte apelante se niega al retiro del Asiento antes mencionado.

El 19 de octubre de 2022, compareció la parte apelante ante el foro primario mediante *Moción de Primera Comparecencia y*

*Solicitando Prorrogar el Término para presentar Alegación Responsiva (30 días)*. Dicha prórroga fue concedida por el foro primario el 22 de agosto de 2022. No obstante, el 18 de noviembre de 2022, la parte apelante le solicitó al foro *a quo*, una prórroga de tres días adicionales para presentar su alegación responsiva.

Así las cosas, el 23 de noviembre de 2022, la parte apelada interpuso ante el foro primario *Moción Solicitando la Anotación de Rebeldía y Sentencia*, la cual fue declarada No Ha Lugar el 14 de diciembre de 2022, notificada al día siguiente.

El 23 de noviembre de 2022, la parte apelante presentó *Moción Solicitando Desestimación (Regla 10.2)*. En la misma argumentó que la parte apelada carecía de legitimación activa, toda vez que, no alegaba un daño real y creíble, conforme lo exige la Regla 6.5 de Procedimiento Civil. 32 LPRA Ap. V, R. 6.5. Añadió que, aun dando por ciertas las alegaciones de la Demanda, estas no señalaban la existencia de un peligro real o potencial, por lo que, no procedía la sentencia declaratoria solicitada. El 29 de diciembre de 2022, la parte apelada instó *Réplica a "Oposición a Moción Solicitando Desestimación"*. Atendidos los escritos de las partes, el 15 de marzo de 2023, el foro *a quo*, declaró No Ha Lugar la moción de desestimación presentada por la parte apelada y ordenó la continuación de los procedimientos y le concedió plazo final de 20 días para presentar su alegación responsiva.

La parte apelada presentó el 21 de abril de 2023 la *Moción Solicitando que se Dicte Sentencia Sumariamente (Moción de Sentencia Sumaria al Amparo de la R. 36)*. En esencia, sostuvo que, el 4 de noviembre de 2016, la Autoridad y 3rd Millennium suscribieron un contrato de arrendamiento intitulado *Ground Lease and Development Agreement* para el desarrollo, construcción y operación de un Centro Integral de Servicios Médicos en las parcelas E1 y E2 del Distrito del Centro de Convenciones. Acotó que, en vista

de que la parte apelante incumplió con sus obligaciones contractuales, el referido contrato quedó cancelado por sus propios términos. Arguyó que, habida cuenta de que actualmente no existe un contrato vigente entre las partes registrado en el Registro de Contratos de la Oficina del Contralor y ante la negativa de la parte apelante a retirar el Asiento de la Escritura Pública Número Catorce (14) –lo que le fuera solicitado en múltiples ocasiones– esta mantiene de rehén a la Autoridad respecto a cualquier otro desarrollo que se pudiera promover en las referidas parcelas, y que pudieran agenciar ingresos al erario público. En consideración a lo anterior, la parte apelada le solicitó al foro primario que dictara sentencia declaratoria a su favor, y en su consecuencia, ordenara la cancelación del Contrato de Arrendamiento y Desarrollo de Terrenos inscrito a favor de la parte apelante, libre de derechos, junto con cualquier otro pronunciamiento procedente en derecho.

El 2 de mayo de 2023, el foro primario le concedió a la parte apelante hasta el 11 de mayo de 2023 para presentar su alegación responsiva con la aclaración de que no aceptaría réplicas ni dúplicas.

Acaecidas varias incidencias procesales, innecesarias pormenorizar, el 12 de mayo de 2023, la parte apelada presentó *Moción Solicitando que se Dé por Sometida la Solicitud de Sentencia Sumaria Sin Oposición.* El 12 de mayo de 2023, notificada el 15 de mayo de 2023, el foro primario declaró No Ha Lugar la referida moción y le concedió prórroga a la parte apelante hasta el 9 de junio de 2023 para oponerse a la moción de sentencia sumaria incoada por la parte apelada.

Así las cosas, la parte apelante el 31 de mayo de 2023, presentó la *Moción de 3rd Millennium Surgery Center LLC para que se Deniegue la Solicitud de Sentencia Sumaria de la Parte Demandante por Prematura.* En apretada síntesis, en su escrito, la

parte apelante se circunscribió a reconocer que aún no había presentado su alegación responsiva y adujo que, la moción de sentencia sumaria era prematura, por lo que, le solicitó término al foro primario para culminar el descubrimiento de prueba, a fin de controvertir los hechos consignados en la misma.

Mediante *Orden* del 1ro de junio de 2023, el foro *a quo* dio por sometida la moción dispositiva presentada para la determinación correspondiente.

El foro de primera instancia emitió la *Sentencia Parcial* cuya revisión nos ocupa. En esta, emitió las siguientes determinaciones de hechos:

1. La Autoridad es una corporación pública del Estado Libre Asociado de Puerto Rico, en virtud de la Ley del Distrito del Centro de Convenciones de Puerto Rico, Ley Núm. 351 de 2000 (23 LPRA sec. 6403 *et seq.*). Fue creada con el propósito de desarrollar, administrar, operar y mantener el Distrito del Centro de Convenciones de Puerto Rico, según lo define la Ley Núm. 351, *supra.*

2. 3rd Millen[n]ium es una compañía de responsabilidad limitada debidamente inscrita en el Departamento de Estado del Estado Libre Asociado de Puerto Rico.

3. El 4 de noviembre de 2016, la Autoridad, —arrendadora— y 3rd Millen[n]ium, —arrendataria— suscribieron el *Ground Lease and Development Agreement.*

4. Mediante el contrato, la Autoridad acordó arrendarle a 3rd Millen[n]ium las parcelas E1 y E2 ubicadas en el Distrito del Centro de Convenciones de Puerto Rico, mientras que 3rd Millen[n]ium se obligó a cumplir con los términos allí expuestos y desarrollar el Centro Integral de Servicios Médicos.

5. El Artículo 2.2 estableció varias condiciones que se debían cumplir por 3rd Millen[n]ium durante el periodo de predesarrollo de la obra. En particular, dispuso que el periodo de predesarrollo expiraría a los treinta y seis (36) meses, contados a partir de la fecha de efectividad, durante el cual 3rd Millen[n]ium debía: (i) obtener todo el financiamiento necesario para la obra que se construirá en los predios; (ii) completar el diseño de la mejora; (iii) obtener los permisos necesarios para la construcción de las mejoras; y (iv) prearrendar el proyecto.

6. Entre el 10 de marzo de 2015 y el 8 de junio de 2016, y previo a suscribirse el contrato en cuestión, 3rd Millen[n]ium remitió a la Autoridad, vía correo electrónico, múltiples memorandos a los fines de informarle acerca del progreso del predesarrollo de la Parcela E-1 y la Parcela E-2.

7. El contrato suscrito entre las partes se ratificó mediante la Escritura Pública Número 14 otorgada por el Notario Miguel Agustín Blanco Fuertes el 4 de noviembre de 2016.

8. La Escritura Pública Número 14 se presentó en el Registro el 21 de noviembre de 2016 y ocupó el asiento número 2016-117701 -SJ0I.

9. El mismo notario y a la misma fecha de otorgada la escritura previamente descrita, se otorgó [la] *"Deed of Segregation, Description of Remnant and Consolidation of Parcels to form Parcel E one (E1) & E Two (E2) of the Puerto Rico Convention Center District",* mediante [la] cual se agruparon varios predios para crear la Parcela E1 y la Parcela E2.

10. El 7 de diciembre de 2016 se registró el contrato en la Oficina del Contralor del Estado Libre Asociado de Puerto Rico y se le asignó el número 2017-000042.

11. El 15 de julio de 2016, el Departamento de Salud emitió un "Certificado de Necesidad y Conveniencia", en la que autorizó a 3rd Millen[n]ium establecer una facilidad de radiología convencional y un laboratorio clínico, ambos autorizados a ser ubicados en la Ave. Baldorioty de Castro, Esquina Enterprise y Ave. Fernández Juncos, Distrito del Centro de Convenciones, San Juan, PR.

12. El 8 de marzo de 2017, el Departamento de Salud emitió un "Certificado de Necesidad y Conveniencia" en [el] que autorizó a 3rd Millen[n]ium [a] establecer una facilidad de cirugía ambulatoria de diez salas en la Ave. Baldorioty de Castro, Esquina Enterprise y Ave. Fernández Juncos, Distrito del Centro de Convenciones, San Juan, PR.

13. El 14 de junio de 2017, Rafael Rodríguez Mercado, en aquel entonces Secretario de Salud, otorgó a 3rd Millen[n]ium una extensión de vigencia respecto al certificado emitido doce meses previos y aclaró que la nueva fecha de expiración sería el 14 de julio de 2018.

14. El 11 de mayo de 2018, el Sr. López cursó una misiva a Omar Marrero Díaz, director ejecutivo de la Autoridad en ese momento, (en adelante, "Sr.

Marrero"), en la que le solicitó una extensión de treinta y seis meses adicionales debido a la ocurrencia de fuerza mayor— el paso del Huracán Irma y el Huracán María—, para completar la fase de predesarrollo requerida por el Artículo 2.2 del contrato.

15. El 11 de julio de 2018, el Sr. Marrero respondió al Sr. López que su solicitud se había rechazado porque los daños a la propiedad descritos en la carta enviada por el Sr. López no estaban relacionados al acuerdo suscrito entre las partes, sino a otras facilidades y operaciones pertenecientes a 3rd Millen[n]ium. Añadió que, en virtud del Artículo 3.11 del contrato, la inhabilidad de obtener aprobaciones y permisos como el "Certificado de Necesidad y Conveniencia", no constituye un acto de fuerza mayor que justificara una extensión.

16. El 17 de octubre de 2019, Noema Giralt Armada, abogada de la Autoridad y en función de secretaria de la Junta de Gobierno, certificó mediante la Resolución 2019-19, que en la reunión ordinaria celebrada el 26 de agosto de 2019 se adoptó lo siguiente:

La ratificación y confirmación de la Resolución 2019-08 que podrá tener el efecto de retirar todos los espacios comerciales de la Parcela El y E2 asignando los mismos a la Parcela C del Distrito del Centro de Convenciones de Puerto Rico y la aprobación de una nueva resolución para la redistribución de llaves de hotel en el Distrito del Centro de Convenciones de Puerto Rico al asignar 300 llaves de habitaciones de hotel a la Parcela C del Distrito del Centro de Convenciones de Puerto Rico y conferirle al director ejecutivo de la Autoridad del Distrito del Centro de Convenciones de Puerto Rico el poder y la autoridad para redistribuir espacios de oficinas y espacios de estacionamiento entre las diversas parcelas privadas del Distrito del Centro de Convenciones de Puerto Rico.

17. El 7 de noviembre de 2019, Noelia García Bardales, directora ejecutiva del Distrito en aquel momento, cursó una carta a Héctor López Pumarejo, gerente de 3rd Millen[n]ium, (en adelante, "Sr. López"), para informarle la terminación del contrato, más le concedió treinta días para subsanar cualquier error. Igualmente, le explicó que la terminación se debía al incumplimiento de 3rd Millen[n]ium respecto al periodo de predesarrollo, amparado en la Sección 13.2(c) del acuerdo.

18. Entre el 1 y 3 de febrero de 2022, hubo un intercambio de correos electrónicos entre la Sra. Giralt y el Sr. López mediante el cual la Sra. Giralt reiteró que la terminación del contrato en disputa

se dio en noviembre de 2019 y aclaró que, por lo tanto, todo reclamo instado en virtud de este por parte de 3rd Millen[n]ium, era improcedente.

19. El 8 de junio de 2022, la Notario Nicole Michelle Vega Acevedo otorgó el Acta Notarial Número 2 mediante la cual acreditó la terminación del contrato suscrito entre las partes.

Consecuentemente, la primera instancia judicial determinó que procedía dictar sentencia sumaria parcial a favor de la parte apelada. Conforme a ello, declaró lo siguiente:

[.............] **HA LUGAR** la [*Moción Solicitando que se Dicte Sentencia Sumariamente (Moción de Sentencia Sumaria al Amparo de la R. 36)],* que presentó la Autoridad el 21 de abril de 2023, en virtud de lo cual, se dicta sentencia declarando **HA LUGAR** la *Demanda* presentada por la Autoridad del Distrito del Centro de Convenciones de Puerto Rico. En consecuencia, **SE ORDENA** al (a la) Hon. Registrador(a) de la Propiedad, la cancelación de la Escritura Pública Número 14, inscrita en el Registro de la Propiedad, Sección Primera de San Juan, ocupando el asiento número 2016-117701-SJ01.

Por no existir razón para posponer dictar sentencia parcial sobre lo aquí descrito hasta la resolución final del pleito, se ordena que se registre la presente *Sentencia Parcial* conforme dispone la Regla 46 de las de Procedimiento Civil, *supra*, y según permite la Regla 42.3 del mismo cuerpo de normas procesales, siendo la misma final para todos los fines en cuanto a las controversias adjudicadas.

Se ORDENA la continuación de los procedimientos en cuanto a la reconvención presentada por la Parte Demandada, el 17 de enero de 2024.
(Énfasis en el original)

Inconforme, la parte apelante acudió ante este foro revisor mediante *Escrito de Apelación* y esgrimió los siguientes señalamientos de error:

**Primer Señalamiento de Error:** Erró TPI al emitir prematuramente la Sentencia Parcial por la vía sumaria sin que 3rd Millennium tuviese oportunidad de hacer descubrimiento de prueba y negarse (por silencio) a conceder la moción presentada al amparo de la Regla 36.6.

**Segundo Señalamiento de Error**: Erró el TPI al emitir la sentencia sumaria parcial a pesar de que los autos demuestran que fue la Autoridad la que incumplió sus obligaciones contractuales principales e indispensables, obstruyendo así los próximos pasos del predesarrollo, cuando menos, no denegarla a base de la

existencia de controversia sobre la causa que entorpeció dichos trabajos de predesarrollo.

El 27 de marzo de 2024, la parte apelada compareció mediante *Alegato de la Parte Apelada*. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

### A. Contratación Gubernamental

Es normativa reiterada que, las obligaciones nacen de la ley, de los contratos y cuasicontratos, de los actos ilícitos, u omisiones en que interviene culpa o negligencia, y cualquier otro acto idóneo para producirlas. Art. 1042 del Código Civil[1], 31 LPRA ant. sec. 2992; *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021). Los contratos se perfeccionan cuando median el objeto, consentimiento y causa. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Aponte Valentín et al. v. Pfizer Pharm., LLC*, 208 DPR 263 (2021). En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, el cual permite a las partes pactar los términos y condiciones que tengan por convenientes. *Pérez Rodríguez v. López Rodríguez*, et al, 210 DPR 163 (2022); *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 7-8 (2015); *Arthur Young & Co. V. Vega III*, 136 DPR 157 (1994). No obstante, tal libertad no es infinita, puesto que, encuentra su límite en el Art. 1207 del Código Civil, 31 LPRA sec. 3372. El referido artículo dispone que, los términos y condiciones que las partes establezcan serán válidas cuando no sean contrarias a la ley, la moral, ni al orden público. 31 LPRA sec. 3372; *Burgos López et al. v. Condado*

---

[1] El derecho aplicable en el caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, puesto que, la presentación de la *Demanda* y los hechos que dan base a esta tuvieron su lugar antes de la aprobación del nuevo Código Civil de Puerto Rico, Ley 55-2020, según enmendado.

*Plaza,* supra, págs. 7-8; *Oriental Bank v. Perapi,* 192 DPR 7, 15 (2014). Una vez perfeccionado el contrato, lo acordado tiene fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375; *Aponte Valentín et al. v. Pfizer Pharm.,* supra; *Payano v. SLG Cruz,* 209 DPR 876, 890-892 (2022); *Burgos López et al. v. Condado Plaza,* supra, pág. 8. Los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilinchini v. UCPR,* 143 DPR 627 (1997).

Por su parte, [l]a Constitución de Puerto Rico establece que "[so]lo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley". Art. VI, Sec. 9, Const. PR., LPRA, Tomo 1, ed.2016, pág. 444. En virtud de este mandato constitucional, [nuestra Alta Curia ha] sido consecuente al exigir el manejo ético y apropiado de los fondos públicos. *Vicar Builders v. ELA et al.,* 192 DPR 256 (2015); *Rodríguez Ramos et al. v. ELA et al.,* 190 DPR 448 (2014); *Jaap Corp. v. Depto. Estado et al.,* 187 DPR 730 (2013). Ello, en miras de que "[l]a buena administración de un gobierno es una virtud de democracia, y parte de una buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa". *Génesis Security v. Depto. Trabajo,* 204 DPR 986, 997 (2020).

A esos fines, la Asamblea Legislativa ha desarrollado un andamiaje de distintos estatutos que tienen como propósito garantizar el control fiscal y regular la contratación gubernamental.

*Vicar Builders v. ELA et al.,* supra, pág. 262. De igual modo, el Alto Foro ha afinado los preceptos de una sana administración pública mediante jurisprudencia. *Jaap Corp. v. Depto. Estado et al.,* supra, pág. 741. En consecuencia, la facultad del Gobierno de Puerto Rico y de sus entidades para contratar y comprometer fondos públicos está limitada por estas normas.[2]

A la luz de lo anterior, [nuestro Tribunal Supremo ha] determinado que todo contrato gubernamental debe cumplir con los requisitos siguientes: (1) reducirse a escrito; (2) mantener un registro que establezca su existencia; (3) remitir copia a la Oficina del Contralor de Puerto Rico, y (4) acreditar que se realizó y otorgó quince días antes. *ALCO Corp. v. Mun. de Toa Alta,* 183 DPR 530, 537 (2011); *Ocasio v. Alcalde Mun. de Maunabo,* 121 DPR 37, 54 (1988). Los contratos gubernamentales deben cumplir rigurosamente con cada una de estas exigencias, "ya que sirven como mecanismo de cotejo para perpetuar circunstancial y cronológicamente esos contratos y, así, evitar pagos y reclamaciones fraudulentas". *Vicar Builders v. ELA et al.,* supra, pág. 264.

De otra parte, como norma general, el Departamento de Hacienda de Puerto Rico (Departamento de Hacienda) tiene la responsabilidad de diseñar y administrar los sistemas de contabilidad y los procedimientos de pago e ingresos de las dependencias y entidades gubernamentales. *Ley de Contabilidad del Gobierno de Puerto Rico,* Ley Núm. 230 de 23 de julio de 1974, 3 LPRA sec. 283 *et seq.* En el ejercicio de estas funciones, el Gobierno de Puerto Rico pre interviene en todas las transacciones financieras de sus dependencias públicas, con el propósito de garantizar su exactitud, corrección, necesidad y legalidad. 3 LPRA sec. 283e.

---

[2] *Id,* págs. 997-998.

Respecto a la contratación gubernamental, el Estado está obligado por imperativo constitucional a manejar los fondos públicos con los principios fiduciarios y éticos más altos. *Jaap Corp. v. Depto. Estado et al.,* supra, pág. 739; *C.F.S.E. v. Unión de Médicos,* 170 DPR 443, 452 (2007).[3]

### B. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio.[4] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022); *Serrano Picón v. Multinational Life Ins.*, 2023 TSPR 118, 212 DPR ___ (2023); *González Meléndez v. Mun. San Juan,* 2023 TSPR 95, 212 DPR ___ (2023); *Birriel Colón v. Econo y Otros,* 2023 TSPR 120, 213 DPR ___ (2023) *Delgado Adorno v. Foot Locker Retail,* 208 DPR 622 (2022). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 224 (2015); *Rosado Reyes v. Global Healthcare,* supra, pág. 808.

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.*, supra. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos

---

[3] *Ramiro Rodríguez Ramos y otros, recurridos, v. ELA de PR y otros, peticionarios,* 190 DPR 448, 456 (2014).

[4] *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021); *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 808 (2020).

materiales.[5] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71 (2022); *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 5; *Rosado Reyes v. Global Healthcare,* supra, pág. 808; *González Meléndez v. Mun. San Juan*, supra. Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 6; *Birriel Colón v. Econo y Otros*, supra; *González Meléndez v. Mun. San Juan*, supra.[6] De la prueba adjunta a la solicitud de sentencia sumaria, deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otros*, supra.

Cónsono con esto, en el pasado, el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo. Véase *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi*, 100 DPR 259 (1971); *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o

---

[5] *Velázquez Ortiz v. Gobierno Mun. De Humacao*, 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018).
[6] Véase *Lugo Montalvo v. Sol Meliá Vacation*, supra, pág. 225; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó además en *Pérez Vargas v. Office Depot*, supra, pág. 699, que el inciso (e) de la Regla 36.3 establece lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3(e).

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v.*

*RAD-MAN*, supra, pág. 14; *Serrano Picón v. Multinational Life Ins.*, supra.

En armonía con lo antes indicado, nuestra Máxima Curia ha expresado que el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones *Birriel Colón v. Econo y Otros*, supra; *Ramos Pérez v. Univisión*, supra, págs. 215-216. Las meras afirmaciones no bastan. *Íd.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 15. También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.* Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

Respecto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *González Meléndez v. Mun. San Juan*, supra.

Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra.  De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido.  *Íd.*  *Serrano Picón v. Multinational Life Ins.*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 116.

## C. Sentencia Declaratoria

La Regla 59 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 59, establece el mecanismo de la Sentencia Declaratoria.  En lo pertinente, en la misma se dispone lo siguiente:

### Regla 59.1. Cuando procede.

*El Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio.  No se estimará como motivo suficiente para atacar un procedimiento o una acción el que se solicite una resolución o sentencia declaratoria.  La declaración podrá ser en su forma y efectos, afirmativa o negativa, y tendrá la eficacia y el vigor de las sentencias o resoluciones definitivas.  Independientemente de lo dispuesto en la Regla 37, el tribunal podrá ordenar una vista rápida de un pleito de sentencia declaratoria, dándole preferencia en el calendario.*

En *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 109 (2020), nuestro Tribunal Supremo manifestó que la sentencia declaratoria es un "'mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita'". *Senado de PR* v. ELA, 203 DPR 62, 71 (2019), citando a *Alcalde Guayama v. ELA*, 192 DPR 329, 333 (2015). Este recurso extraordinario, cuyo propósito es disipar una incertidumbre jurídica y contribuir a la paz social, puede ser dictado en procesos

en los cuales "los hechos alegados demuestran que existe una controversia sustancial entre partes que tienen intereses legales adversos, sin que medie lesión previa de los mismos [...]". R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 5ta ed., San Juan, Ed. Lexis Nexis, 2010, pág. 560. Además, provee que "toda persona [...] cuyos derechos [...] fuesen afectados por un estatuto, una ordenanza municipal, un contrato o una franquicia, [puede] solicitar una [determinación] sobre cualquier divergencia en la interpretación o validez de [estos] y [...] que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven". Regla 59.2(a) de Procedimiento Civil, 32 LPRA Ap. V.

Conforme a la doctrina prevaleciente, el mecanismo de la sentencia declaratoria debe utilizarse cuando permite finalizar situaciones de incertidumbre o inseguridad en cuanto a derechos. *Suárez v. C.E.E.,* 162 DPR 43 (2004); *Colegio de Ingenieros v. A.A.A.,* 131 DPR 735 (1992); *Charana v. Pueblo,* 109 DPR 641 (1980); *Moscoso v. Rivera,* 76 DPR 481 (1954). De ese modo, permite obviar la inseguridad y los peligros de un salto en la oscuridad, cuando existe una controversia jurídica genuina entre las partes. *Asoc. de Vecinos v. Iglesia Católica,* 117 DPR 346 (1986).

La sentencia declaratoria propicia la seguridad y certidumbre en las relaciones jurídicas tanto en el ámbito público, como en el privado. *Romero Barceló v. E.L.A.,* 169 DPR 460 (2006)*; Moscoso v. Rivera, supra.* Al emitir una sentencia declaratoria, el Tribunal de Instancia debe comparar los intereses públicos y privados de las partes, la necesidad de emitir la sentencia declaratoria y el efecto que ello tiene sobre lo reclamado, por lo que debe demostrarse que los intereses de la justicia serían bien servidos. *Moscoso v. Rivera, supra.*

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En su primer señalamiento de error, la parte apelante nos plantea que, erró el Tribunal de Primera Instancia al emitir prematuramente la *Sentencia Parcial* por la vía sumaria sin que 3rd Millennium tuviese oportunidad de hacer descubrimiento de prueba y negarse (por silencio) a conceder la moción presentada al amparo de la Regla 36.6.

Como cuestión de umbral, al ejercer nuestra función revisora respecto a una moción de sentencia sumaria debemos: 1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas,* supra.

Al revisar ponderadamente la moción de sentencia sumaria instada por la parte apelada, colegimos que, en efecto, dicha parte cumplió con las disposiciones de la Regla 36.3 de Procedimiento Civil, *supra,* al  incluir: (i) una exposición breve de las alegaciones; (ii) la causa de acción, reclamación o parte respecto a la cual solicita la sentencia sumaria; (iii) una relación concisa, organizada y en párrafos enumerados de *veintidós (22) hechos esenciales y*

*pertinentes sobre los cuales no hay controversia sustancial,* con indicación de la prueba admisible en evidencia obrante en el expediente del tribunal donde se establecen estos hechos,[7] (iv) las razones por las cuales debe ser dictada la sentencia, apoyada con la correspondiente argumentación del derecho aplicable, y (v) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* supra, pág. 940; *SLG Fernández-Bernal v. RAD-MAN,* supra, pág. 14.

Conforme a esta normativa procesal, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Por el contrario, está obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud puesto que, de incumplir, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho.[8]

En el caso que nos ocupa, la parte apelante, por el contrario, se circunscribió alegar que la moción de sentencia sumaria era prematura y a solicitarle término al foro primario para culminar el descubrimiento de prueba, a fin de controvertir los hechos consignados en la misma. Lo anterior, nos lleva a concluir forzosamente que, la parte apelante incumplió con la normativa procesal pertinente para lograr derrotar la disposición sumaria.

---

[7] La parte apelada anejó a su moción los siguientes documentos: *i)* Deed Number Fourteen (14) *Deed of Ratification and Conversion of Ground Lease and Development Agreement and Right to Purchase to Public Instrument; ii*) Copia de la carta del 7 de noviembre de 2019 enviada por la Autoridad a 3rd Millennium mediante correo certificado; *iii*) Evidencia del registro del contrato 2017-000042 en la Oficina del Contralor de Puerto Rico; *iv)* Copia de la Escritura Número 2 otorgada el 8 de junio de 2022 ante la Notario Nicole Michelle Vega Acevedo intitulada *Notarial Act to Attest the by Default Termination of the Ground Lease and Development Agreement – Parcels E One (E1) and E Two (E2) of the Puerto Rico Convention Center District; v) Certification of the Public Notary Filing a Document with the Puerto Rico Property Registry by Telematic Method; vi)* comunicaciones mediante correos electrónicos entre la licenciada Noema Giralt y Héctor López*; vii)* Declaración Jurada suscrita por la licenciada Noema Giralt el 21 de abril de 2023; *viii*) *Ground Lease and Development Agreement y sus anejos.*

[8] Véanse: *Rodríguez García v. UCA*, supra; *Roldán Flores v. M. Cuebas*, supra; *Bobé et al. v. UBS Financial Services*, 198 DPR 6 (2017); *Meléndez González et al. v. M. Cuebas*, supra; *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

Ciertamente, nuestra Máxima Curia ha destacado que, el descubrimiento de prueba está íntimamente ligado al proceso de sentencia sumaria. Las alegaciones influirán, tanto en la información específica que los abogados procurarán indagar en el proceso de descubrimiento de prueba, así como en el mecanismo particular que han de escoger para llevar a cabo esa faena. El trámite de sentencia sumaria presupone que el promovido ha podido concluir el descubrimiento de prueba necesario para responder adecuadamente a la solicitud de sentencia sumaria. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020).

Ahora bien, en el presente caso, la parte apelante no solo no procuró llevar a cabo el descubrimiento de prueba para apoyar su contención, sino que, ni siquiera contestó la *Demanda,* a pesar de haber decursado en exceso el término reglamentario para ello. La Demanda fue presentada el **22 de agosto de 2022.** Desde **el 19 de octubre de 2022,** la parte apelante instó ante el foro primario *Moción de Primera Comparecencia y Solicitando Prorrogar el Término para Presentar Alegación Responsiva (30 días).* Empero se cruzó de brazos y nada hizo para defenderse de las alegaciones. Lo anterior, a pesar de que como mencionamos, el 15 de marzo de 2023, se declaró No Ha Lugar su solicitud de desestimación y se le concedió un término final para presentar su alegación responsiva. Mucho menos, procuró descubrir prueba, si entendía que ello era necesario para su defensa. Ante este escenario procesal, el planteamiento de la parte apelante de que no ha podido concluir el descubrimiento de prueba nos parece más bien una excusa en la cual pretende escudarse para eludir la adjudicación sumaria que nos atiene.

Tampoco podemos perder de perspectiva que los planteamientos esbozados por la parte apelada en su moción de sentencia sumaria le son harto conocidos a la parte apelante. No se puede soslayar el hecho que la razón para dar por terminado el

contrato en controversia obedeció a la inacción e incumplimiento de la parte apelante con sus obligaciones contractuales, lo cual fue objeto de discusión entre las partes. En mérito de lo anterior, razonamos que no se cometió el primer error señalado.

En su segundo señalamiento, la parte apelante arguye que, erró el foro *a quo* al emitir la sentencia sumaria parcial, a pesar de que los autos demuestran que fue la Autoridad la que incumplió sus obligaciones contractuales principales e indispensables, obstruyendo así los próximos pasos del predesarrollo, cuando menos, no denegarla a base de la existencia de controversia sobre la causa que entorpeció dichos trabajos de predesarrollo.

Como sabemos, en la oposición a una solicitud de sentencia sumaria, el promovido debe, como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega están en disputa y que impiden que se dicte una sentencia sumaria en su contra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición según exige la Regla 36.3. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa.[9] *León Torres v. Rivera Lebrón,* supra, pág. 44.

Como sabemos, la parte promovente de la moción de sentencia sumaria viene obligada a desglosar los hechos sobre los que aduce que no existe controversia y, para cada uno, especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. Regla 36.3 de Procedimiento Civil, *supra*; *Roldán Flores v. M. Cuebas*, supra, pág. 676. Empero, en el caso ante nos eso no ocurrió.

---

[9] Citas omitidas.

Destacamos que, coincidimos con el razonamiento del foro *a quo*. Al examinar el expediente del caso ante nos y luego de un examen de *novo*, encontramos que las Determinaciones de Hechos realizadas por el foro primario se basan en los documentos que obran en el expediente y anejados a la *Moción Solicitando que se Dicte Sentencia Sumariamente (Moción de Sentencia Sumaria al Amparo de la R. 36)*, los cuales no fueron controvertidos por la parte apelante. Colegimos que no se cometió el segundo error señalado.

**VI**

Por los fundamentos que anteceden, se confirma el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones