ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL X**

| | | |
|---|---|---|
| **ALEXANDRA HERNÁNDEZ HERNÁNDEZ Y GABRIEL JOSÉ DA VEIGA HERNÁNDEZ**, RECURRENTE(S) <br><br> V. <br><br> **ESPACIO RESIDENTIAL LLC** <br><br> RECURRIDA(S) | **TA2025AP00252** | ***Apelación procedente del Tribunal de Primera Instancia Sala de Bayamon*** <br><br> Caso Núm: DCD2015-0622 <br><br><br> Sobre: <br> Cobro de Dinero y Ejecución de Hipoteca (Vía Ordinaria) |

Panel integrado por su presidenta, Jueza Grana Martínez, Juez Ronda Del Toro y Jueza Lotti Rodríguez

*Grana Martínez*, juez ponente

### Sentencia

En San Juan, Puerto Rico, hoy día 12 de diciembre de 2025.

Comparece ante nos, la señora Alexandra Hernández Hernández y el señor Gabriel José De Veiga Hernández (en adelante, los apelantes) mediante un recurso de *Apelación* presentado el 18 de agosto de 2025, en el cual nos solicita que dejemos sin efecto la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Bayamón (TPI o foro primario) el 27 de mayo de 2025. Mediante el referido dictamen, el foro primario declaró "Ha Lugar" la *Sentencia Sumaria* a favor de Espacio Residential LLC (en adelante, Espacio o apelado) sobre acción civil de Cobro de Dinero y Ejecución de Hipoteca por la vía ordinaria.

Por los fundamentos que expondremos, se confirma la *Sentencia* apelada.

### I.

El 2 de febrero de 2023, Espacio presentó una *Demanda Enmendada* de Cobro de Dinero y Ejecución de Hipoteca en contra de los

apelantes el cual son los herederos, del Sr. Juan Ramon Hernández Alvarado habiendo este fallecido el 11 de noviembre de 2015.[1] Allí, se alegó que el 22 de mayo de 2004, se suscribió un pagaré hipotecario a favor de Doral Financial Corporation d/b/a HF Mortgage Bankers, mediante el cual se concedió un préstamo por la cantidad de $468,000.00 por una duración de treinta (30) años a un interés de 9.95%. En esa misma fecha se constituyó la Escritura de Hipoteca número diecinueve (19) sobre el inmueble sito en 4 B St., La Colina, Guaynabo, PR 00969. Posteriormente, el 31 de marzo de 2005, se otorgó una Escritura de Modificación de Hipoteca con un principal de $512,229.00. De todo lo anterior, el apelado alegó que los apelantes incumplieron con los términos del préstamo por haber dejado de pagar el mismo.

Por su parte, el 13 de octubre de 2023, los apelantes presentaron una *Moción de Desestimación* por falta de jurisdicción, en la cual indicaron que no se ha dado un proceso de *Loss Mitigation* ni se ha llevado a cabo una mediación compulsoria.[2] Luego, el 21 de noviembre de 2023, el apelado presentó su *Moción en Oposición a la Desestimación y en Solicitud de Referido a Mediación Compulsoria de ser Aplicable.*[3]

Posteriormente, el 26 de diciembre de 2023, los apelantes presentaron su *Contestación a la Demanda y Moción Informativa en Cumplimiento de Resolución y Orden.*[4] Allí, indicaron, entre otras cosas, que Espacio no tiene legitimación activa porque no ha demostrado que es el tenedor del pagaré hipotecario. Asimismo, adujeron que las cuantías alegadas están sujetas a controversia y que no se incluyó documento fehaciente alguno en el que surja el desglose detallado de las partidas reclamadas, así como la responsabilidad contractual del pago.

---

[1] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI) (La sucesión del Sr. Juan Ramon Hernández Alvarado está compuesta por John Raymond Hernández Casillas, Marlene Hernández Casillas, Anthony Pete Hernández Ramírez, Alexandra Hernández Hernández y Gabriel José Da Veiga Hernández. Los únicos herederos que repudiaron la herencia fueron los primeros tres integrantes de la sucesión).
[2] Entrada #6 de SUMAC TPI.
[3] Entrada #8 de SUMAC TPI.
[4] Entrada #9 y 10 de SUMAC TPI.

Luego, el 25 de enero de 2024, el foro primario emitió una *Orden* para que se refiriera a las partes al Centro de Mediación.[5] Posteriormente, el 23 de mayo de 2024, se llevó a cabo la reunión de mediación. Sin embargo, la representación legal de los apelantes desistió del proceso de mediación.[6]

Así las cosas, el 3 de julio de 2024, el apelado presentó una *Moción Solicitando Sentencia Sumaria* en la cual alegó, entre otras cosas, que no está en controversia el pagaré hipotecario que se suscribió a favor de Doral Financial Corporation d/b/a HF Mortgage Bankers por la cantidad de $468.000.00.[7] No obstante, esta fue posteriormente modificada el 31 de marzo de 2004, mediante la Escritura de Modificación de Hipoteca el cual ascendía a la cantidad de $512,229.00. Asimismo, expuso que estos son la entidad con derecho a exigir el cumplimiento de los términos y condiciones del pagaré hipotecario.

De otro lado, el 9 de abril de 2025, los apelantes presentaron su *Oposición a Moción de Sentencia Sumaria*.[8] En dicha moción, los apelantes expresaron que existe controversia sobre los siguientes hechos: (1) la cuantía y validez del cobro de dinero en virtud del contrato de hipoteca y su ejecución; (2) si Espacio es el poseedor de buena fe del original del pagaré; (3) si estos tienen legitimación activa para reclamar el cobro de dinero y la ejecución de hipoteca. Además, argumentaron que el apelado carece de legitimación activa para instar la acción de cobro de dinero y la ejecución de hipoteca. En síntesis, señalaron que Espacio carece de legitimación activa debido a que:

> La parte demandante es una entidad internacional dedicada al comercio de cobro de préstamos y créditos hipotecarios. Es promovente de acciones que envuelvan una actividad comercial revista de un alto grado de interés público. . .. [Q]ue no está registrada en Puerto Rico para hacer negocios de los cuales se dedica en su país de origen.
>
> .        .        .        .        .        .        .        .
>
> El demandante no cumple con los requisitos de la Ley 247 del 2010, según enmendada. "Ley para regular el Negocio de

---

[5] Entrada #11 de SUMAC TPI.
[6] Entrada #16 de SUMAC TPI.
[7] Entrada #17 de SUMAC TPI.
[8] Entrada #20 de SUMAC TPI.

Préstamos Hipotecarios de Puerto Rico, Artículo 2.1 al no ostentar licencia ni estar registrados ante la Oficina del Comisionado de Instituciones Financieras por lo que está impedida de ejecutar hipotecas y el Artículo 3.4 al no haber prestado fianza como negocio dedicado a la concesión de préstamos hipotecarios en Puerto Rico.[9]

El 28 de abril de 2025, el apelado presentó su *Réplica a Oposición a Moción de Sentencia Sumaria*.[10] Allí, alegó ser la entidad con derecho a exigir el cumplimiento del instrumento negociable, ya que mostraron copia fiel y exacta del pagaré el cual se encuentra endosado a su nombre. Por último, adujo que no le aplicaba las exigencias de licencia y fianza establecida en la Ley Núm. 247-2010, *infra*.

El 27 de mayo de 2025, el foro primario emitió una *Sentencia*, en la que determinó que los siguientes hechos no están en controversia:

1. El 22 de mayo de 2004, los deudores obligacionales Hernández Hernández suscribieron un pagare hipotecario a favor de Doral Financial Corporation d/b/a HF Mortgage Bankers, mediante el cual se le concedió préstamo bajo los siguientes términos:

   | | |
   |---|---|
   | Comienzo | 1 de julio de 2004 |
   | Vencimiento | 1 de junio de 2034 |
   | Principal | $468,000.00 |
   | Interés Anual | 9.95% |
   | Pago Regular | $4,089.75 |

2. Se pactó además, el pago de una suma equivalente al diez por ciento (10%) del principal original, para costas, gastos y honorarios de abogado en caso de reclamación por la vía judicial.

3. En garantía de dicho préstamo, la parte demandada otorgó la escritura número 19, en la misma fecha y ante el mismo notario, mediante la cual constituye hipoteca sobre el inmueble propiedad sito en 4 B ST., LA COLINA, GUAYNABO, PR 00969 y para el que se estableció como tipo mínimo en caso subasta la suma de $468,000.00.

4. La propiedad inmueble que garantiza el préstamo hipotecario objeto de la presente acción se describe como sigue:

   **URBANA**: Solar marcado con el número 4 de la Calle B de la Urbanización La Colina, radicada en la carretera estatal número 833 en el barrio Frailes del término municipal de Guaynabo, Puerto Rico, compuesto de 1153.273 metros cuadrados. En lindes por el NORTE, con carretera municipal en 44.00 metros lineales; por el SUR, con la calle B, en 20.558 metros lineales; por el ESTE, con el solar número 3, en 33.00 metros lineales; y por el OESTE, con el solar número 5, en 44. 135 metros lineales. Enclava una casa.

   Consta inscrita al folio 40 del tomo 865 de Guaynabo, finca 32, 128, Registro de la Propiedad Guaynabo.

5. El 31 de marzo de 2005, los deudores obligacionales y Doral Financial d/b/a HF Mortgage Bankers acordaron modificar el préstamo hipotecario objeto del caso de autos mediante Escritura de Modificación de Hipoteca, otorgado ante el Notario Público Edgardo del Valle Galarza. Acordaron las partes que el nuevo principal seria en la cantidad del

---

[9] Íd., págs. 0190-0192.
[10] Entrada #21 de SUMAC TPI.

$512,229.00. Los demás términos y condiciones del préstamo permanecerían sin alteración.

6. El 30 de noviembre de 2010, los deudores obligacionales y Doral Bank acordaron Plan de Reducción de Pago debido el incumplimiento con los pagos en el préstamo hipotecario objeto del caso de epígrafe. Acordaron que los deudores obligacionales debían $511, 536.20 en principal a dicha fecha y modificaron los pagos mensuales para el préstamo, quedando los pagos como sigue:

   a. Durante el primer año, del 1 de enero de 2011 al 1 de diciembre de 2011, los pagos serian de intereses solamente al 1. 194%, en la cantidad de $488.96;
   b. Durante el segundo año, del 1 de enero de 2012 al 1 de diciembre de 2012, los pagos serian de intereses solamente, al 9.95%, en la cantidad de $4,074.70;
   c. Durante el restante de la vida del préstamo, con nueva fecha de vencimiento al 1 de abril de 2045, los pagos mensuales serian de principal e interés, en la cantidad de $ 4, 247.15.
   d. Los deudores obligacionales realizarían un pago final en la cantidad de $333,985.78, cual no generaría intereses durante la vigencia del acuerdo.

7. La parte demandada incumplió los términos del préstamo que le fue concedido, por haber dejado de efectuar los pagos acordados, por lo que la parte demandante ha optado por declarar vencida y exigible la totalidad de dicho préstamo.

8. La parte demandante es la entidad con derecho a exigir el cumplimiento de los términos y condición del pagare hipotecario.

9. Los esfuerzos de ESPACIO para lograr que la parte demandada cumpla con las obligaciones acordadas han resultado infructuosos, por lo que ésta no ha tenido más alternativa que proceder con la ejecución de la garantía hipotecaria constituida.

10. Conforme la información provista por la demandante, al 1 de febrero de 2023, los demandados adeudan las siguientes sumas: $851,323,28 de principal, cual incluye una suma por balance diferido en la cantidad de $359, 901.99; intereses en la cantidad de $549,626.80, cuales se acumulan mensualmente al 9.95%, desde el 1ro de diciembre de 2011 hasta el saldo total de la deuda; $37, 195.69 por concepto de cargos por mora, los cuales continúan acumulándose hasta el saldo total de la deuda; más la suma de $46,800.00 por concepto de honorarios de abogado contractuales. Esto además de cualesquiera sumas de dinero por concepto de contribuciones, primas de seguro hipotecario y riesgo, los cuales continúan acumulándose hasta el saldo total de la deuda, así como de cualesquiera otras cantidades pactadas en la escritura de hipoteca. A la fecha de la declaración jurada, se adeudaban $20.00 por concepto de cargos por emisión de cheques con fondos insuficientes, $55, 980. 67 por concepto de adelantos por deficiencia en la cuenta de reserva, los cuales continúan acumulándose hasta el saldo total de la deuda; $21, 499 por concepto de adelantados recobrables, los cuales continúan acumulándose hasta el saldo total de la deuda.

La parte demandante presentó Certificaciones del "Servicemember", acreditando que los deudores obligacionales no son o fueron miembros activos de las fuerzas armadas de los Estados Unidos de América conforme a la Sección 201 (b)(4) del "Servicemembers Civil Relief Act".

La parte demandante ha manifestado que no puede proveer la certificación negativa de "Servicemembers Civil Relief Act" con relación a los demandados Alexandra Hernández Hernández y Gabriel José de Veiga Hernández, toda vez que no cuenta con la información sobre fechas de nacimiento o números de seguro social requerida para hacer la búsqueda. A esos efectos, se exime a la parte demandante del requisito de acreditar si los miembros de la Sucesión se encuentran en servicio militar activo.[11]

---

[11] Entrada #2 de SUMAC TPI.

Así pues, el foro primerio resolvió que los apelantes le adeudan a Espacio las cantidades según esbozadas en el punto diez (10) de los hechos probados. Además, ordenó a que se vendiera el inmueble en pública subasta al mejor postor.

El 11 de julio de 2025, los apelantes presentaron una *Moción de Reconsideración,* en la cual indicaron que existe hechos materiales en controversia lo cual impiden al foro primario resolver de manera sumaria.[12] Los hechos controvertidos a juicio de estos son en relación con las partidas reclamadas en la Demanda. En específico, la cantidad principal, intereses, cargos por mora, por concepto de cargos por emisión de cheques con fondos insuficientes, por concepto de adelanto por deficiencia en la cuenta de reserva y por concepto de adelantos recobrables. Esto se da en el escenario de que según el apelado no le han brindado documento alguno en el que surja un desglose detallado de las partidas reclamadas ni de la responsabilidad de pago. El 17 de julio de 2025, el foro primario declaró "No Ha Lugar" la *Moción de Reconsideración.*[13]

Inconforme con el proceder del TPI, el 18 de agosto de 2025, los apelantes acudieron ante este Tribunal mediante recurso de *Apelación* y señalan los siguientes errores:

> **PRIMER ERROR**: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR SENTENCIA A SABIENDAS DE QUE EXISTEN HECHOS EN CONTROVERSIA, ESPECIFICAMENTE CON RESPECTO A LAS PARTIDAS RECLAMADAS, NI DE DONDE SURGE LA RESPONSABILIDAD DE PAGO POR LAS SUMAS ALEGADAMENTE ADEUDADAS POR LOS CODEMANDADOS O QUE ESTABLEZCA QUE DICHA DEUDA SEA LÍQUIDA, VENCIDA Y EXIGIBLE QUE IMPIDEN DICTAR SENTENCIA SUMARIA Y REQUIEREN LA CELEBRACIÓN DE UNA VISTA EVIDENCIARIA.

> **SEGUNDO ERROR**: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR SENTENCIA A SABIENDAS DE QUE LA MISMA ES SIN JURISDICCIÓN POR EL DEMANDANTE NO HABER CUMPLIDO CON LOS REQUISITOS DE LA LEY 247 DEL 2010, SEGÚN ENMENDADA. "LEY PARA REGULAR EL NEGOCIO DE PRÉSTAMOS HIPOTECARIOS DE PUERTO RICO, ARTÍCULO 2.1 AL NO OSTENTAR LICENCIA NI ESTAR REGISTRADO ANTE LA OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS POR LO QUE ESTÁN IMPEDIDOS DE EJECUTAR HIPOTECAS.

---

[12] Entrada #20 de SUMAC TPI.
[13] Entrada #24 de SUMAC TPI.

**TERCER ERROR**: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR SENTENCIA A SABIENDAS DE QUE LA MISMA ES SIN JURISDICCIÓN POR EL DEMANDANTE NO HABER CUMPLIDO CON LOS REQUISITOS DE LA LEY 247-2010, SEGÚN ENMENDADA, "LEY PARA REGULAR EL NEGOCIO DE PRÉSTAMOS HIPOTECARIOS DE PUERTO RICO", ARTÍCULO 3.4 AL NO HABER PRESTADO FIANZA COMO NEGOCIO DEDICADO A LA CONCESIÓN DE PRÉSTAMOS HIPOTECARIOS EN PUERTO RICO.

**CUARTO ERROR:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA DE BAYAMÓN, EN NO ORDENAR QUE LA DEMANDANTE PRESENTARA EL PAGARÉ ORIGINAL.

## II.

### A. Sentencia Sumaria

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. *CSM v. ELA,* 2025 TSPR 78, (2025). Esta tiene como propósito el solicitar al Tribunal que se dicte "sentencia a favor del promovente a base de prueba que a la moción se acompaña sin necesidad de que se celebre vista en su fondo porque en realidad no existe controversia real sobre ningún hecho material en el caso". R. Hernández Colon, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6.ª ed. Rev. San Juan, 2017, pág. 313. La moción de sentencia sumaria solo va a proceder en aquellos casos en los cuales no existan controversias reales y sustanciales en cuanto a los hechos materiales, por lo que al juez solo le restara aplicar el derecho. *Meléndez González et al. v M. Cuebas*, 193 DPR 100, 109 (2015); *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). El Tribunal Supremo de Puerto Rico ha establecido que "un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Íd., pág. 110.

La Regla 36.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V, regula el mecanismo procesal de la moción de sentencia sumaria. La Regla 36.3(e) dispone que para emitir una determinación de forma sumaria será necesario que las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones

juradas si las hay, u otra evidencia demuestran que no hay controversia real y sustancial en cuanto a algún hecho esencial y como cuestión de derecho se dictara una sentencia favorable de la parte peticionaria.

Asimismo, la Regla 36.3 de Procedimiento Civil, establece que la parte que conteste la moción de sentencia sumaria debe hacer referencia a los párrafos de los hechos esenciales y pertinentes que estén en controversia. A su vez, debe indicar las páginas de las declaraciones juradas u otra prueba en donde se establezcan los hechos que los respaldan. *Oriental Bank v. Perapi et al., supra,* pág. 25. La controversia en cuanto a los hechos esenciales debe ser una real, por lo tanto, cualquier duda que surja no es suficiente para vencer la moción de sentencia sumaria. Íd., pág. 26.

Cuando se presente una moción de sentencia sumaria la parte promovida no puede descansar solamente en las declaraciones o negaciones de su alegación, si no que tiene el deber de contestar especifica y detalladamente como el promovente. Regla 36.3(c) de Procedimiento Civil. De no actuar así, el tribunal dictará sentencia sumaria en su contra si procede. Íd. Por lo tanto, la parte que se opone a la moción de sentencia sumaria no puede cruzarse de brazos y descansar en sus planteamientos. *CSM v. ELA, supra,* pág. 11. Si no que una vez se presente una controversia real y sustancial y este se oponga a la moción de sentencia sumaria tiene que presentar prueba al juez que lo convenza de resolver a su favor. *Oriental Bank v. Perapi et al., supra,* pág. 26.

El Tribunal de Apelaciones se encuentra en la misma posición que el foro primario a la hora de revisar una solicitud de sentencia sumaria. *CSM v. ELA, supra,* pág. 6. El Tribunal Supremo en el caso normativo de *Meléndez González et al. v M. Cuebas* estableció cual es el estándar que utilizara el Tribunal de Apelaciones si concede o niega una moción de sentencia sumaria. El estándar es el siguiente:

> *Primero*: (. . .) [E]l foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su

fondo. La revisión del Tribunal de Apelaciones es *de novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de sentencia Sumaria al foro primario, llevando a cabo todas las inferencias permisibles a su favor.

*Segundo*, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumpla con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil. . ..

*Tercero*, en el caso de revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De *haberlos, el foro apelativo intermedio tiene que cumplir con las exigencias de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuales hechos materiales encontró que están en controversia y cuales están incontrovertidos*. Esta determinación se puede hacer en la sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

*Cuarto*, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplico correctamente el Derecho a la controversia. *Meléndez González et al. v M. Cuebas, supra,* págs. 118-119.

## B. Ley para Regular el Negocio de Préstamos Hipotecarios de

## Puerto Rico.

La Ley Núm. 247 de 30 de diciembre de 2010, 7 LPRA sec. 3051 *et seq.,* mejor conocida como la *Ley para Regular el Negocio de Préstamos Hipotecarios de Puerto Rico,* fue aprobada con el fin de regular los negocios dedicados a la concesión de préstamos hipotecarios para financiar la adquisición de bienes inmuebles. En lo particular, este estatuto aplicará a toda persona que se dedique parcial o totalmente, al negocio de concesión de préstamos hipotecarios, el negocio de corretaje de préstamos hipotecarios, o a la originación de préstamos hipotecarios. Art. 1.3(a) de la Ley Núm. 247-2010, 7 LPRA sec. 3051a. Por lo tanto, esta ley tiene aplicabilidad solo en las tres instancias antes mencionadas.

El Artículo 1.2(w) de la aludida ley define el negocio de concesión de préstamos hipotecarios como:

[E]l negocio mediante el cual se otorgan uno o varios adelantos en efectivo o su equivalente, hechos por un prestamista (comúnmente conocido como acreedor hipotecario) evidenciado por una escritura de constitución de hipoteca que grava debidamente uno o varios bienes inmuebles, donde se fijan las condiciones y l forma de pago o liquidación del préstamo. Incluye, además, la administración de préstamos hipotecarios, según se define el inciso (b) de este Articulo. 7 LPRA sec. 3051.

Por otro lado, el inciso (b) del mismo artículo dispone que la Administración de Préstamos Hipotecarios (*Servicing*) es:

> El envío de los estados de cuenta periódicos al cliente; la gestión de los pagos del préstamos hipotecario; recibir y aplicar los pagos de principal, interés y cargos por mora al préstamo, los abonos a cuenta o cuentas en plica (*escrow accounts*), el pago de contribuciones sobre la propiedad, el pago de los seguros durante la vigencia de un préstamo hipotecario, la custodia de expedientes y documentos relacionados al préstamo hipotecario y la prestación de servicios suplementarios y del cumplimiento con las leyes aplicables, entre otros. Artículo 1.2(b) de la Ley Núm. 247-2010, 7 LPRA sec. 3051.

El Artículo 2.1 de la misma ley establece la persona que se quiera dedicar al negocio de concesión de préstamos hipotecarios, al negocio de corretaje de préstamos hipotecarios o a la originación de préstamos hipotecarios en Puerto Rico tiene que obtener una licencia por parte del Estado. 7 LPRA sec. 3052. Asimismo, la ley dispone en su Artículo 3.4 que toda persona dentro de las tres (3) instancias antes mencionadas y que solicite una licencia, necesitara presentar una fianza por la cantidad de $500,000.00. 7 LPRA sec. 3053c.

### C. Ley de Transacciones Comerciales.

La Ley Núm. 208 de 17 de agosto de 1995, según enmendada, 19 LPRA sec. 401 nota *et seq.*, mejor conocida como la *Ley de Transacciones Comerciales* tiene como objetivo "simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales". En lo pertinente, la Sección 2-104 de la referida ley define a un instrumento negociable como:

> [U]na promesa o una orden incondicional de pago de una cantidad especifica de dinero, con o sin interés u otros cargos descritos en la promesa u orden, si el mismo: (1) es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor; (2) es pagadero a la presentación o a una fecha específica. [...]. 19 LPRA sec. 504.

En otras palabras, un instrumento negociable es un documento que comprueba una deuda (un crédito) y que puede cambiarse de mano según lo dispone el estatuto. L.M. Negrón Portillo y M.M. Fabian Maldonado, *Derecho Mercantil y otros principios generales del derecho puertorriqueño*, San Juan, Ed. Sítum, 1997, pág. 194. Asimismo, los instrumentos negociables pueden ser negociados, así como transferidos a un tercero que no formó parte de la transacción inicial. Íd. La

titularidad de un pagaré al portador se transfiere por la mera entrega al tenedor. Ahora bien, en lo que respecta a un pagaré que es a la orden, este será transferido cuando conste el endoso. *Lozada Merced v. Registrador*, 100 DPR 99, 104 (1971). Una vez se hayan dado una de las dos situaciones antes mencionadas el tenedor tendrá legitimación activa para hacer cumplir su derecho de crédito.

Por otra parte, la Sección 2-203 de la Ley Núm. 208-1995 establece que "[l]a cesión del instrumento sea esta una negociación o no, confiere al cesionario cualquier derecho del cedente a exigir el cumplimiento del instrumento, incluyendo cualquier derecho que tuviese como tenedor de buena fe [...]". 19 LPRA sec. 553.

### III.

En el primer señalamiento de error, los apelantes alegan que el TPI no podía dictar sentencia sumaria al haber controversias sobre las cuantías y en torno a que la deuda no era una líquida, vencida y exigible. Por otro lado, aducen que incidió el foro primario al dictar sentencia a sabiendas de que la misma es sin jurisdicción por el apelado no haber cumplido con los requisitos de la Ley Núm. 247-2010, al no ostentar licencia ni estar registrado ante la Oficina del Comisionado de Instituciones Financieras por lo que están impedidos de ejecutar hipotecas. Igualmente, insisten que el mismo foro no tiene jurisdicción porque el apelado no prestó fianza como negocio dedicado a la concesión de préstamos hipotecarios en Puerto Rico. Como último error, estos entienden que incidió el TPI al no ordenar al apelado a presentar el pagaré original. A continuación, se discutirán los planteamientos por partes.

Primero, los apelantes nos indican que existe controversia sobre las cuantías reclamadas. No obstante, el TPI en su *Sentencia* explicó que los apelantes le adeudan al apelado las siguientes cuantías:

> [A]l 1 de febrero de 2023; $851,323.28 de principal, cual incluye una suma por balance diferido en la cantidad de $359,901.99; cuales se acumulaban mensualmente al 9.95% desde el 1ro de diciembre de 2011 hasta el saldo total de la deuda; $37,195. 69 por concepto de cargos de mora, los cuales continúan acumulándose hasta el saldo total de la deuda; más la suma de $46,800.00 por concepto de honorarios de abogado contractuales.

> Esto, además, de cualesquiera sumas de dinero por concepto de contribuciones, primas seguro hipotecario y riesgo, los cuales continúan acumulándose hasta el saldo total de la deuda, si como cualesquiera otras cantidades pactadas en la escritura de hipoteca. A la fecha de declaración jurada, se adeudaban $20.00 por concepto de cargos por emisión de cheques con fondos insuficientes, $55, 980. 67 por concepto de deficiencia en la cuenta de reserva, los cuales continúan acumulándose hasta el saldo total de la deuda; $21, 499.19 por concepto de adelantos recobrables, los cuales continúan acumulándose hasta el saldo total de la deuda.[14]

Las referidas cuantías forman parte de la *Moción de Sentencia Sumaria* del apelado en el punto diez (10) de los hechos materiales que no están en controversia.[15] Ahora bien, conviene señalar, que, aunque los apelantes levantan como error en su recurso de *Apelación* que las cuantías están en controversia, no se desprende así de su *Oposición a la Moción de Sentencia Sumaria*. Nos resulta contradictorio que los apelantes indicaron en dicha moción que:

> [S]obre la parte IV. Hechos materiales que *no están en controversia* ofrecida por la parte demandante en su Moción de Sentencia Sumaria, las partes aquí comparecientes **no tienen controversias** en cuanto a las enumeradas con el uno (1), dos (2), tres (3), cuatro (4), cinco (5), seis (6), siete (7), nueve (9), **diez (10)** [ . . .].[16]

De lo anterior, es claro la contradicción de los apelantes en sus escritos de *Oposición a la Moción de Sentencia Sumaria* y su recurso de *Apelación* en torno si existe o no controversia sobre las cuantías. Adviértase que, si los apelantes entendían que existía algún tipo de controversia en torno a las cuantías, estos debían presentarla en su *Oposición a la Moción de Sentencia Sumaria*. Allí, debieron presentar prueba que controvierta las mismas, junto con alguna declaración jurada u otra evidencia, y luego, levantar el error a nivel apelativo. No obstante, ese no fue el caso.

Segundo, en torno a si la deuda era una líquida, vencida y exigible el apelado en el punto seis (6) de su *Moción de Sentencia Sumaria* indicó que se acordó el 30 de noviembre de 2010 a un plan de reducción, debido al incumplimiento con el préstamo hipotecario por parte de los

---

[14] Entrada #2 de SUMAC TPI, pág. 17.

[15] Entrada #17 de SUMAC TPI, pág. 86.

[16] Entrada #6 de SUMAC TPI, pág. 190. (Énfasis suplido).

apelantes.[17] Asimismo, en el punto siete (7) de dicha moción, expuso que los apelantes incumplieron con los términos del préstamo por estos haber dejado de efectuar los pagos acordados, por lo que, el apelado optó por declarar vencida y exigible la totalidad de dicho préstamo.[18] Similar al error antes planteado, los apelantes en su *Moción a la Oposición de la Sentencia Sumaria* tenían que controvertir dicho hecho y no lo hicieron. Todo lo contrario, en su escrito oponiéndose a la Moción de Sentencia Sumaria aceptaron como hecho no controvertido aceptaron la alegación número 7. Conforme a ello, entendemos que en efecto la deuda es una líquida, vencida y exigible.

Por estar relacionados, atendemos en conjunto el segundo y tercer señalamiento de error planteado por los apelantes. En síntesis, estos aducen que el foro primario no tiene jurisdicción debido a que el apelado no cumplió con solicitar una licencia ni prestar fianza según los Art. 2.1 y Art. 3.4 de la Ley Núm. 247–2010. Además, añadieron que al no cumplir con los artículos antes mencionados el apelado no tiene legitimación activa.

Según la normativa antes expuesta, la Ley Núm. 247-2010, dispone un listado taxativo en torno a los entes que le aplica su estatuto. En específico, menciona tres (3) instancias en que aplica: negocios de concesión de préstamos hipotecarios; el negocio de corretaje de préstamos hipotecarios; o a la originación de préstamos hipotecarios. A nuestro entender, Espacio no cae bajo ninguna de las tres (3) instancias. Es decir, no es un negocio de concesión de préstamos hipotecarios, no es un negocio de corretaje de préstamos hipotecarios y no es un ente de originación de préstamos hipotecarios para que le pueda ser aplicable la Ley Núm. 247-2010. A esos efectos, tampoco la fianza le aplica, ya que esta es exigible únicamente a quienes se dedican profesionalmente al negocio de originar y conceder préstamos hipotecarios.

---

[17] Entrada #17 de SUMAC TPI, pág. 85.
[18] Íd., pág. 86.

Además, aun con lo anterior, el apelado tiene legitimación activa para solicitar el pago de la deuda, dado a que, es la tenedora del pagaré hipotecario.[19] El pagaré fue endosado a la orden de Espacio por el antiguo tenedor, Roosevelt Cayman Asset Company, que a su vez, tuvo el pagaré de Doral Financial Corporation.[20] Por tanto, Espacio estaba en posición de solicitar el Cobro de Dinero y la Ejecución de Hipoteca, debido a que se encuentra en la misma posición de ejercer los derechos que tenían los cedentes para exigir el cumplimiento de su obligación.

Por último, el cuarto señalamiento de error gira en torno a que la presentara el pagaré original. En su recurso de *Apelación,* estos exponen que Espacio no ha provisto documentación alguna que evidencie que es el tenedor del mencionado pagaré. Sin embargo, surge del expediente que desde la *Réplica a Oposición a Moción de Sentencia Sumaria* el apelado ha estado en la disposición de que se señale una vista presencial para la inspección del pagaré.

## IV.

Por los fundamentos antes expuestos, se modifica la *Sentencia* apelada a los únicos efectos que se señale una vista presencial en la que se permita la inspección del pagare cuya ejecución se solicita. Por todo lo demás, se confirma y queda en pleno vigor la Sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[19] Íd., pág. 108.
[20] Íd. en la pág. 108.